## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CATHERINE NGUYEN, individually and on behalf of all others similarly situated, | Civil Action No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| ALGENIST LLC, | |
| Defendant. | |

Plaintiff Catherine Nguyen ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Algenist LLC ("Defendant" or "Algenist"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a putative class action lawsuit on behalf of purchasers of Algenist Collagen Products[1] (collectively, the "Products"). Defendant markets and sells the Products as proprietary "vegan collagen" skincare that provide "advanced anti-aging" benefits and "restore[s] bounce and resilience with active vegan collagen." However, collagen as a topical product is worthless because it cannot penetrate the top layer of skin to provide such benefits. Further, collagen is a product derived from animals – it is impossible for plants to produce collagen in any manner. Accordingly, Defendant's representations regarding the skin-firming and anti-aging benefits of vegan collagen in the Products are false and misleading.

---

[1] Algenist Collagen Products include, but are not limited to, Algenist Genius Collagen Calming Relief, Algenist Genius Liquid Collagen, and Algenist Genius Sleeping Collagen.

1

2.      By way of background, collagen cosmetic products (like the Algenist Products at issue here) are beauty products that contain collagen, and that purportedly stimulate collagen synthesis and growth, leading to anti-aging benefits.  The global collagen market was valued at $4.27 billion in 2018 and is expected to grow to $6.63 billion by 2025.[2]  As a result, collagen has become a huge marketing tool to draw consumers into "anti-aging" or "healthy-aging" or products.

3.      Collagen is the main structural protein in animal and human connective tissues, most notably human skin.  Collagen therefore serves as one of the main building blocks for bones, skin, hair, muscles, tendons, and ligaments.

4.      The human body naturally makes collagen, but this production decreases with age.  As humans enter their 20s and 30s, collagen production slows, triggering wrinkles and saggy skin.

5.      Consumers therefore desire collagen skincare products, in theory, to replace the natural collagen organically lost by aging of the human body.  Collagen is often sold as a supplement, like collagen peptide powders, capsules, or liquid.

6.      Accordingly, collagen has become a popular beauty product ingredient that claims to improve the health and appearance of consumers' skin.

7.      Some manufacturers, like Defendant, claim that their products contain "vegan collagen," made of genetically engineered microorganisms, such as yeasts and bacteria.  However, because collagen is naturally an animal byproduct, it's impossible for there to be a "vegan collagen" variant.

---

[2] Grand View Research, *Collagen Market Size Worth $16.7 Billion by 2028*, https://www.grandviewresearch.com/press-release/global-collagen-market.

8.      However, topical application of products containing collagen – vegan or not – does not improve skin texture because collagen molecules cannot penetrate the epidermis.[3]  This is because collagen molecules, which have a high molecular weight of 300 kDa (kilodaltons),[4] are too large to be absorbed into the skin when applied in a cream.[5]

9.      Defendant has therefore engaged in widespread false and deceptive advertising of its Products by claiming the Products contain proprietary "vegan collagen" that provides "advanced anti-aging" benefits and "restore[s] bounce and resilience with active vegan collagen."  Every package of the Products prominently claims that the Products contain vegan collagen that will provide these anti-aging and skin restoring qualities.

10.      Plaintiff and Class Members purchased the Products designed, marketed manufactured, distributed, and sold by Defendant as containing "vegan collagen" that provides "advanced anti-aging" benefits and "restore[s] bounce and resilience with active vegan collagen."  Further, Plaintiff and Class Members relied to their detriment on Defendant's representations that the Products would actually have an anti-aging effect on their skin.  Plaintiff and Class Members would not have purchased Defendant's Products – or, at minimum, would not have paid as much as they did to purchase them – had they known the Products were not actually capable of providing anti-aging benefits.  Plaintiff and Class Members thus suffered monetary damages as a result of Defendant's deceptive and false representations.

---

[3] L. Genovese, et al., An Insight into the Changes in Skin Texture and Properties following Dietary Intervention with a Nutricosmeceutical Containing a Blend of Collagen Bioactive Peptides and Antioxidants, https://www.karger.com/Article/Fulltext/464470.

[4] *See* https://www.mdpi.com/2076-3921/9/2/181/htm?crsi=662497360&amp;cicada_org_src=healthwebmagazine.com&amp;cicada_org_mdm=direct.

[5] Inverse, *Do Collagen Supplements Work? A Scientist Splits Fact From Fiction*, https://www.inverse.com/article/59395-collagen-supplements-do-they-work.

## PARTIES

11.     Plaintiff Catherine Nguyen is a citizen of New York, residing in New York, New York.  Plaintiff Nguyen purchased Algenist Genius Collagen Calming Relief in April of 2021 at a TJ Maxx in New York, New York.  Prior to her purchases of Algenist Genius Collagen Calming Relief, Plaintiff Nguyen reviewed the Product's labeling and packaging and saw that the Algenist Genius Collagen Calming Relief contained "vegan collagen" that would provide "advanced anti-aging" benefits.  Plaintiff Nguyen relied on the Product's labeling and packaging to choose the Algenist Product over comparable products.  Plaintiff Nguyen saw these representations prior to and at the time of purchase, and understood them to mean that Algenist Products contained "collagen" and/or "vegan collagen" that would provide "advanced anti-aging benefits."  Plaintiff Nguyen relied on these representations and warranties in deciding to purchase the Algenist Products.  Accordingly, these representations and warranties were part of the basis of the bargain in that she would not have purchased the Products on the same terms had she known these representations were not true.  However, Plaintiff Nguyen has an intention to purchase the Product in the future if the Product is truthfully labeled.  In making her purchase, Plaintiff Nguyen paid a substantial price premium due to the false and misleading collagen claims.  Plaintiff Nguyen used the Products in accordance with their directions.  However, she did not receive the benefit of her bargain because her Algenist Products did not, in fact, provide any anti-aging or skin-firming benefits.

12.     Defendant Algenist LLC  is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Redondo Beach, California.  Algenist manufactures, sells, and/or distributes Algenist-brand products, and is responsible for the advertising, marketing, trade dress, and packaging of the Products.  Algenist manufactured,

marketed, and sold the Products during the class period throughout New York and the entire United States.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, are citizens of states different from Defendant.

14.     This Court has personal jurisdiction over Defendant because it conducts substantial business within New York, including the manufacturing, sale, marketing, and advertising of the Products.  Defendant also maintains its corporate headquarters and principal place of business in this judicial district.

## FACTUAL ALLEGATIONS

### A.     Collagen Products in the Beauty Industry

15.     Collagen is the most abundant protein the human body, making up an estimated 80% of the human skin.[6]  It is often referred to the as the "body's scaffolding," as it is the most important structural protein in skin.  Plentiful levels of collagen in the human skin gives the skin a firm, plump, and youthful look.[7]

16.     However, the presence of collagen in the human body is not everlasting.  With the occurrence of smoking, sun exposure, and natural aging, collagen loss begins in a person's 20s.

---

[6] Modere, *3 Reasons Why Collagen Creams Don't Work*, https://thelatest.modere.com/3-reasons-why-collagen-creams-dont-work/.

[7] *Id.*

17.     Loss of collagen over time leads to a decline in the structural integrity of the skin, leading to the dehydration and thinning of the skin, causing wrinkles to form and joint cartilage to weaken.

18.     As a result, collagen-based beauty products which purport to combat the natural loss of collagen in the human body are becoming increasingly popular.  In fact, collagen protein supplements recorded an increase in sales of 64% from June 2020 to June 2021, making up over half of the total $107.9 beauty supplement sales during that time period.[8]

19.     Similarly, topical collagen products are also increasingly popular.  These products purport to replace the body's natural loss of collagen by smoothing wrinkles and improving skin elasticity.

20.     However, topical collagen products are incapable of producing these desired effects.  This is because the molecules in topically-applied collagen are too large to fit through the uppermost layer of the skin, and therefore, cannot effectively cross the skin barrier to penetrate the skin.[9]  Moreover, no topical collagen product can stimulate and increase natural collagen production.[10]

21.     Thus, while there is some authority to suggest that ingesting collagen orally has some (mild) effect on skin hydration, elasticity and wrinkling, topical collagen products are

---

[8] Emily Jarecki, *Collagen Beauty Supplements Expected to Continue Stellar Growth Through 2021*, https://www.nutraingredients-usa.com/Article/2021/07/16/Collagen-beauty-supplements-expected-to-continue-stellar-growth-through-2021.

[9] FutureDerm, *How Can I Rebuild Collagen?*, https://www.futurederm.com/how-can-i-rebuild-collagen/.

[10] Modere, *3 Reasons Why Collagen Creams Don't Work*, https://thelatest.modere.com/3-reasons-why-collagen-creams-dont-work/.

simply worthless as they are incapable of having any anti-aging or skin-firming effects on the skin.[11]

> **B.      Defendant's Misrepresentations Regarding The Products**

22.      Algenist sells, manufactures, and markets the Products as containing "collagen" and/or "vegan collagen" that provides "advanced anti-aging" benefits.  On the front of the Products' Packaging, the products are touted as providing these anti-aging benefits:

---

[11] Do-Un Kim, et al., *Oral Intake of Low-Molecular-Weight Collagen Peptide Improves Hydration, Elasticity and Wrinkling in Human Skin: A Randomized, Double-Blind, Placebo-Controlled Study*, https://pubmed.ncbi.nlm.nih.gov/29949889/.





23.     The Products contain the following "vegan collagen" ingredients:

| Product | Ingredient |
|---|---|
| Algenist Genius Collagen Calming Relief | Collagen (Vegetable) |
| Algenist Genius Liquid Collagen | Collagen (Vegan) |
| Algenist Genius Sleeping Collagen | Collagen (Vegan) |

24.     However, despite the presence of "vegan collagen" in the Products, the Products are incapable of providing the touted benefits, and are therefore ineffective.

25.     In pertinent part, collagen is a protein derived from animals.  It plays an essential part in body structure by acting as the "glue" to provide stability, resistance, and elasticity to all

connective tissue.  Collagen cannot be found in plants, or non-mammalian life.[12]  Therefore
plant-based collagen is not even truly collagen.

26.    To create "vegan collagen," human genes that code for collagen are added to the
genetic structure of bacteria or modified yeasts.  The yeast or bacteria then starts to produce the
building blocks of human collagen.  Typically pepsin, a digestive enzyme is added to help
structure the collagen molecules to mimic the exact structure of human collagen.[13]  Resultingly,
"vegan collagen" is too large to penetrate the skin and provide any antiaging benefits.[14]

27.    Defendant's advertising and marketing of the Products is therefore false and
misleading.  Algenist prominently advertises on the front label of the Products that they contain
"collagen" and/or "vegan collagen" that provides "advanced anti-aging" benefits.  Therefore,
consumers reasonably expect that the Products will, in fact, provide anti-aging benefits.

28.    Defendant's misrepresentations and/or omissions violate consumers' reasonable
expectations and, as alleged herein, New York's consumer protection statutes.

29.    Defendant, as a leader in beauty and skin care products, knew (or, at the very
least, should have known) that the Products' express representations were false, deceptive, and
misleading.

30.    Defendant employs professional cosmetic chemists and microbiologists to create
and test the chemical formulas for the Products.  Therefore, Defendant knew or should have
known that the Products are incapable of providing the anti-aging benefits as warranted.

---

[12] Vita Recherche, *Vegan Collagen in cosmetics or nutri-cosmetics: Myth or Reality?*
https://www.vitarecherche.com/en/blog/vegan-collagen-in-cosmetics-or-nutri-cosmetics-myth-or-reality-n73

[13] Healthline, *Here's What You Need to Know About Vegan Collagen,*
https://www.healthline.com/health/food-nutrition/vegan-collagen#creating-vegan-collagen

[14] Jenna Igneri, *What Exactly is Vegan Collagen – And How Can It Benefit Your Skin,*
https://coveteur.com/2021/01/21/vegan-collagen/

31.     On information and belief, Defendant did know that the Products were ineffective and unable to live up to their labeling claims, but chose to include the representations anyway because those labeling claims allow Defendant to sell the Products at a price premium compared to products that do not contain such claims.

32.     Had Defendant not made these false, misleading, and deceptive representations, Plaintiff and Class Members would not have purchased the Products or, at minimum, would not have paid as much as they did for such products.  Thus, Plaintiff and Class Members suffered an injury in fact and lost money or property as result of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

33.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

34.     Plaintiff seeks to represent a class defined as all people who purchased the Products that falsely advertised that the product purportedly contained "vegan collagen" that would provide "advanced anti-aging" benefits during the applicable statute of limitations (the "Class").  Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

35.     Plaintiff Catherine Nguyen also seeks to represent a subclass consisting of Class Members who reside in New York (the "New York Subclass").

36.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

37.     **Numerosity.** The Class and Subclass Members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of Members in the Class and in the Subclass. Although the precise number of Class and Subclass Members is unknown to Plaintiff, it is known by Defendant and may be determined through discovery.

38.     **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all Members of the Class and Subclasses and predominate over any questions affecting only individual Class or Subclass members. These common legal and factual questions include, but are not limited to, the following:

(a)     Whether Defendant made false and/or misleading statements to the consuming public concerning the benefits of the Products;

(b)     Whether Defendant's labeling and packaging for the Products is misleading and/or deceptive;

(c)     Whether Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of the Products;

(d)     Whether Defendant's representations concerning the Products were likely to deceive a reasonable consumer;

(e)     Whether Defendant's omissions concerning the Products were likely to deceive a reasonable consumer;

(f)      Whether Defendant represented to consumers that the Products have characteristics, benefits, or qualities that they do not have;

(g)      Whether Defendant advertised the Products with the intent to sell them not as advertised;

(h)      Whether Defendant falsely advertised the Products;

(i)      Whether Defendant made and breached express warranties to Plaintiff and Class and Subclass Members about the Products;

(j)      Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiff and Class and Subclass Members; and

(k)      Whether Plaintiff and Class and Subclass Members are entitled to damages.

39.      With respect to the New York Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated New York's General Business Law §§ 349 and 350.

40.      **Typicality.**  Plaintiff's claims are typical of the claims of the other Members of the Class and Subclasses in that, among other things, all Class and Subclass Members were deceived (or reasonably likely to be deceived) in the same way by Defendant's false and misleading advertising claims about the anti-aging benefits of the Products.  All Class and Subclass Members were comparably injured by Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendant that are unique to Plaintiff.

41.    **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Members of the Class and Subclass.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclasses.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclasses.

42.    **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for Class or Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them.  Even if Class or Subclass Members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  It would also increase the delay and expense to all parties and the court system from the issues raised by this action.  The class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

43.    In the alternative, the Class and Subclass may also be certified because:

(a)     the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class or Subclass Members that would establish incompatible standards of conduct for Defendant;

(b)      the prosecution of separate actions by individual Class and Subclass Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and Subclass Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)      Defendant has acted or refused to act on grounds generally applicable to the Class and to the Subclass as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the Members of the Class and to the Members of the Subclasses as a whole.

## COUNT I
### Violation Of New York's Gen. Bus. Law § 349
### (On Behalf Of The New York Subclass)

44.      Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

45.      Plaintiff Catherine Nguyen brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

46.      Defendant committed deceptive acts and practices by employing false, misleading, and deceptive representations about the anti-aging benefits of its topical collagen Products to mislead consumers into believing the Products would provide the touted benefits.

47.      Plaintiff Nguyen has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices.  Specifically, Plaintiff Nguyen purchased the Products for her own personal use.  In doing so, Plaintiff Nguyen relied upon Defendant's false, misleading, and deceptive representations that the Products would provide anti-aging benefits.  The Products purchased did live up to the representations on their labeling.  Plaintiff Nguyen spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising

claims.

48.     Defendant's deceptive acts and practices were directed at consumers.

49.     Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations.  Defendant knew consumers would purchase the Products and/or pay more for them under the false – but reasonable – belief that the collagen Products would provide anti-aging benefits, when they do not.  By advertising so prominently that the Products provide such benefits, Defendant proves that information about these benefits is material to consumers.  If such information were not material, Defendant would not feature it prominently on the front label of the Products.  As a result of its deceptive acts and practices, Defendant has profited enormously from selling the Products to unsuspecting consumers across New York.  If Defendant had advertised its Products truthfully and in a non-misleading fashion, Plaintiff Nguyen and other New York Subclass Members would not have purchased them or, at minimum, would not have paid as much as they did for them.

50.     As a direct and proximate result of Defendant's false, misleading, and deceptive representations, Plaintiff Nguyen and other Members of the New York Subclass were injured in that they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about purported benefits of the Products were truthful.

51.     On behalf of herself and Members of the New York Subclass, Plaintiff Nguyen seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## **COUNT II**
### **Violation Of New York's Gen. Bus. Law § 350**
### **(On Behalf Of The New York Subclass)**

52.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

53.     Plaintiff Catherine Nguyen brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

54.     Defendant engaged in a campaign of false advertising with regard to the anti-aging benefits of the Products to mislead consumers into believing that the Products contain "vegan collagen" that  will provide "advanced anti-aging" benefits.

55.     Plaintiff Nguyen has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices.  Specifically, Plaintiff Nguyen purchased the Products for her own personal use.  In doing so, Plaintiff Nguyen relied upon Defendant's false, misleading, and deceptive representations that the Products would provide anti-aging benefits.  Plaintiff Nguyen spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

56.     Defendant's deceptive acts and practices were directed at consumers.

57.     Defendant's deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations.  If Defendant had advertised its Products truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased the Products or would not have paid as much as they did for them.

58.     As a direct and proximate result of Defendant's false, misleading, and deceptive representations, Plaintiff Nguyen and other Members of the New York Subclass were injured in that they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about topical collagen were truthful.

59.     On behalf of herself and Members of the New York Subclass, Plaintiff Nguyen seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
### Breach Of Express Warranty
### (On Behalf Of The Class And The New York Subclass)

60.     Plaintiff hereby incorporates by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

61.     Plaintiff Catherine Nguyen brings this claim individually and on behalf of the Members of the proposed Class and New York Subclass against Defendant.

62.     As the designer, manufacturer, marketer, distributor, and/or seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products contain "vegan collagen" that will provide "advanced anti-aging" benefits. Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff Nguyen and Members of the Class and New York Subclass.

63.     In fact, the Products do not conform to Defendant's representations about anti-again and skin-firming benefits because the Products are incapable of providing such benefits. By falsely representing the Products in this way, Defendant breached express warranties.

64.     On September 13, 2021, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a warranty notice letter that complied in all respects with U.C.C. 2-607.  The letter provided notice of breach of warranties.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the U.C.C. 2-607 and state consumer protection laws and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.

65.     As a direct and proximate result of Defendant's breach, Plaintiff Nguyen and Members of the Class and Subclass were injured because they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the benefits (or lack of benefits) of the Products were truthful. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff Nguyen and Class and Subclass Members would not have purchased the Products or would not have paid as much as they did for them.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, seeks judgment against Defendant as follows:

a. Certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass Members;

b. Declaring that Defendant's conduct violates the statutes referenced herein;

c. Finding in favor of Plaintiff, the nationwide Class and the Subclass against Defendant on all counts asserted herein;

d. Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices as set forth herein;

e. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all the money they are required to pay;

f. Awarding Plaintiff and Class and Subclass Members their costs and expenses incurred in the action, including reasonable attorneys' fees;

g. Ordering Defendant to pay pre-judgment interest on all amounts awarded;

h. Providing such further relief as may be just and proper.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: January 3, 2022               Respectfully submitted,

                                     **BURSOR & FISHER, P.A.**

                                     By:_____/s/ Alec M. Leslie_____
                                              Alec M. Leslie

                                     Alec M. Leslie
                                     888 Seventh Avenue
                                     New York, NY  10019
                                     Telephone: (646) 837-7150
                                     Facsimile:  (212) 989-9163
                                     Email: aleslie@bursor.com

                                     **BURSOR & FISHER, P.A.**
                                     L. Timothy Fisher*
                                     Brittany S. Scott*
                                     1990 North California Blvd., Suite 940
                                     Walnut Creek, CA 94596
                                     Telephone:  (925) 300-4455
                                     Facsimile:  (925) 407-2700
                                     Email:  bscott@bursor.com

                                     *Pro Hac Vice Forthcoming*

                                     *Attorneys for Plaintiff*