**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CATHERINE NGUYEN, individually and on behalf of all others similarly situated, | Civil Action No.: 1:22-CV-00013-KPF |
| *Plaintiff,* | Hon. Katherine Polk Failla U.S.D.J. |
| *v.* | Oral Argument Requested |
| ALGENIST, LLC, | |
| *Defendant.* | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO DISMISS THE COMPLAINT**
**PURSUANT TO FED. R. CIV. P. 9(B) AND 12(B)(6)**

Daniel J. Cohen, Esq. (DC0532)
NEWMAN, SIMPSON & COHEN, LLP
The Armour Building
32 Mercer Street
Hackensack, New Jersey
Telephone: (201) 487-0200
Facsimile: (201) 487-8570
Email: dcohen@nscllp.com

Jason M. Kerr, Esq. *(pro hac vice)*
Steven W. Garff, Esq. *(pro hac vice)*
PRICE PARKINSON & KERR, PLLC
5742 West Harold Gatty Drive
Salt Lake City, Utah 84116
Telephone: (801) 517-7088
Facsimile: (801) 530-2932 fax
Email: jasonkerr@ppktrial.com
         steven.garff@ppktrial.com

*Attorneys for Defendant, Algenist LLC*

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ........................................................................................................ 1

  A. The Complaint Misrepresents the Packaging ...................................................... 1

  B. The Complaint Does not and Cannot Plead Facts showing the Products do Not
     Perform as Advertised ......................................................................................... 2

  C. The Complaint is filled with Other Fatal Defects ............................................... 4

II. ARGUMENT .......................................................................................................... 4

  A. Legal Standard ................................................................................................... 4

    1. The FAC Fails to State a Claim Under Rule 8 ............................................ 4

    2. The Court may properly consider the contents of the Product packaging and
       articles cited in the Complaint in deciding a Rule 12(b)(6) motion because they
       are integral documents to the Complaint .................................................... 6

  B. The Complaint's Allegations are Contradicted by the Actual Representation as it
     appears on the Products ....................................................................................... 7

  C. The Complaint Fails to Plead Any Facts Showing that the Products do Not Deliver the
     Promised Benefits ............................................................................................... 8

    1. Plaintiff's conclusion that vegan collagen cannot penetrate the skin is without
       factual support and is contradicted by the sources she relies on .................... 9

    2. Plaintiff's theory about vegan collagen does not even apply to the vegan collagen
       in the products ......................................................................................... 11

    3. The Complaint alleges no facts supporting its assumption that molecules must
       penetrate the outer layer of the skin to result in anti-aging benefits, and its own
       relied on sources flatly contradict this assumption ...................................... 12

    3. The Complaint's theory of falsity ignores the fact that the Products contain
       multiple functional ingredients, not vegan collagen alone .......................... 13

  D. Any Argument that Consumers Are Misled by "Vegan Collaen" is Implausible in
     Light of Other Allegations in the Complaint and Fails the Reasonable Consumer Test ... 16

  E. Plaintiff Fails to Plausibly Allege Causation or Injury ...................................... 19

# TABLE OF CONTENTS

**Page(s)**

F.   The Complaint Fails to State a Claim for Breach of Warranty ......................................... 20

G.   Plaintiff Lacks Standing for Products She Did Not Purchase ............................................ 21

H.   Plaintiff Lacks Standing to Seek Injunctive Relief ............................................................ 22

I.   Plaintiff Cannot Bring Nationwide Class Claims ............................................................. 23

CONCLUSION ....................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

*Aloudi v. Intramedic Rsch. Grp., LLC,*
  *No. 15-cv-00882-HSG, 2016 WL 1569981 (N.D. Cal. Apr. 19, 2016), aff'd, 729 F.*
  *App'x 514 (9th Cir. 2017)* ................................................................................................ 14, 15

*Amidax Trading Grp. v. S.W.I.F.T.*
  *SCRL, 671 F.3d 140, 146-47 (2d Cir. 2011)* ........................................................................ 1, 7

*Ashcroft v. Iqbal,*
  *556 U.S. at 662, 678 (2009)* ................................................................................................... 16

*Avola v. Lousiana-Pacific Corp.,*
  *991 F. Supp. 2d 381, 396-97 (E.D.N.Y. 2013)* ....................................................................... 18

*Belfiore v. Procter & Gamble Co.,*
  *311 F.R.D. 29, 53 (E.D.N.Y. 2015)* .......................................................................................... 7

*Bell Atlantic Corp. v. Twombly,*
  *550 U.S. 544, 555 (2007)* ............................................................................................... 4, 5, 11

*Berni v. Barilla S.p.A.,*
  *964 F. 3d 141, 147 (2d Cir. 2020)* .................................................................................... 22, 23

*Bowring v. Sapporo U.S.A., Inc.,*
  *234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017)* ............................................................................ 17

*Brass v. Am. Film Techs., Inc.,*
  *987 F. 2d 142, 150 (2d Cir. 1993)* ............................................................................................ 6

*Brockey v. Moore,*
  *107 Cal. App. 4th 86, 100 (Cal. App. 2003)* ......................................................................... 1, 8

*Bronson Partners, LLC,*
  *564 F. Supp. 2d at 125)* ............................................................................................................ 7

*Chambers v. Time Warner, Inc.,*
  *282 F. 3d 147, 153 (2d Cir. 2002)* ............................................................................................ 6

*Cheslow v. Ghirardelli Chocolate Co.,*
  *445 F. Supp. 3d 8, 20 (N.D. Cal. 2020)* ................................................................................. 18

*Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.,*
  *No. CV1701875MWFMRWX, 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017)* ................. 2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*City of Los Angeles v. Lyons,*
  *461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)*....................................................... 22

*Colella v. Atkins Nutritionals, Inc.,*
  *348 F. Supp. 3d 120, 142 (E.D.N.Y. 2018)* .................................................................. 18, 19, 20

*Dash v. Seagate Tech (U.S.) Holdings, Inc.,*
  *27 F. Suipp. 3d 357, 360 (E.D.N.Y. 2014)* ............................................................................ 17

*Davis v. Hain Celestial Grp., Inc.,*
  *297 3d 327, 334 (E.D.N.Y. 2018)*........................................................................................... 8

*Derbaremdiker v. Applebee's Int'l, Inc.*
  *2012 WL 4482057, at \*5-8 (E.D.N.Y. Sept. 26, 2012)*....................................................... 21

*Deshawn E. by Carlott E. v. Safir,*
  *156 F. 3d 340, 344 (2d Cir. 1998)* ...................................................................................... 22

*DiMuro v. Clinique Labs, LLC*
  *572 F. App'x 27, 32 (2d Cir. 2014)*...................................................................................... 21

*Eckler v. Wal-Mart Stores, Inc.,*
  *2012 WL 5382218, at \*3 (S.D. Cal. Nov. 1, 2012)* .......................................................... 14, 15

*Fed. Trade Comm'n v. Adept Mgmt. Inc.,*
  *No. 1:16-cv-00720-CL, 2018 WL 4623152, at \*1 (d. Or. Sept. 25, 2018)* ............................... 7

*Gray v. Bayer Corp.,*
  *Civ. Act. No. 08-4716 (JLL), 2011 WL 2975768, at \*7 (D.N.J. July 21, 2011)* ..................... 24

*Grossman v. Simply Nourish Pet Food Co., LLC,*
  *516 F. Supp. 3d 261, 274-75 (E.D.N.Y. 2021)*...................................................................... 23

*Gunaratna v. Dennis Gross Cosmetology LLC,*
  *2020 WL 8509681 (C.D. Cal. Nov. 13, 2020)*........................................................................ 24

*Hadley v. Kellogg Sales Co.,*
  *243 Supp. 3d 1074 (N.D. Cal. 2017)*...................................................................................... 2

*Hairston v. S. Beach Beverage Co.,*
  *No. cv 12-1429-JFW DTBX, 2012 WL 1893818, at \*1 (C.D. Cal. May 18, 2012)* ................ 18

## TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Hernandez v. Johnson & Johnson Consumer Inc.,*
  2020 WL 2537633, at *6 (D.N.J. May 19, 2020)...................................................................... 21

*Hodges v. Vitamin Shoppe, Inc.,*
  No. CIV.A. 13-3381 SRC, 2014 WL 200270, at *4 (D.N.J. Jan 15, 2014) ............................. 12

*Holve v. McCormick & Co., Inc.,*
  334 F. Supp. 3d 535, 548 (W.D.N.Y. 2018) ............................................................................ 22

*Hughes v. Ester C Co.,*
  930 F. Supp. 2d 439, 455 (E.D.N.Y. 2013) ............................................................................. 10

*I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.*
  936 F. 2d 759, 762 (2d Cir. 1991) .............................................................................................. 6

*Izquierdo v. Mondelez Int'l, Inc.,*
  2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016).................................................................. 20

*Kwan v. SanMedica Int'l, LLC,*
  No. 14-cv-03287-NEJ, 2014 WL 5494681, at *3 (N.D. Cal. Oct. 30, 2014)..................... 14, 15

*McKinnis v. Kellogg USA,*
  cv07-2611ABC(RCX), 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) ......................... 19

*Melendez v. ONE Brands, LLC,*
  No. 18cv06650CBASJB, 2020 WL 1283793, at *6 (E.D.N.Y. Mar. 16, 2020) .......... 7, 8, 18, 19

*Nelson v. MillerCoors, LLC,*
  246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017) ........................................................................ 5, 17

*Papasan v. Allain,*
  478 U.S. 265, 286 (1986).............................................................................................................. 4

*Razuki v. Nationstar Mortg., LLC*
  2020 WL 1478374, at *3 (N.D. Cal. Mar. 26, 2020)................................................................. 24

*Reyes v. Crystal Farms Refrigerated Distribution Co.,*
  2019 WL 3409883, at *5 (E.D.N.Y. July 26, 2019) ................................................................. 21

*Spector v. Mondelez Int'l, Inc.,*
  No. 15 C4298, 2017 WL 4283711, at *5 (N.D. Ill. Sept. 27, 2017) ......................................... 12

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Summers v. Earth Island Institute,*
   *555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009)*....................................................... 22

*Time Warner Cable, Inc. v. DIRECTV, Inc.,*
   *No. 6-cv-14245, 2007 WL 1138879, at \*4 (S.D.N.Y. Apr. 16, 2007)*......................................... 7

*Truxel v. Gen. Mills Sales, Inc.,*
   *2019 WL 3940956, \*4 (N.D. Cal. Aug. 13, 2019)*.................................................................... 18

*Weiner v. Snapple Beverage Corp.,*
   *2010 WL 3119452, at \*6 (S.D.N.Y. Aug. 5, 2010)*.................................................................. 20

*Workman v. Plum, Inc.,*
   *141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015)* ........................................................................ 18

**Rules**

Rule 12(b)(6).................................................................................................................................. 4, 6

# I.    <u>INTRODUCTION</u>

Plaintiff Catherine Nguyen's ("Plaintiff") allegations that Defendant Algenist, LLC's ("Algenist" or "Defendant") Products[1] are falsely advertised is based on two implausible assertions:

> **Premise 1:** The Products are advertised as containing "'vegan collagen' that provides 'advanced anti-aging'" (Complaint at ¶¶ 9, 10, 27).

> **Premise 2:** "[T]he molecules in topically-applied collagen are too large to fit through the uppermost layer of the skin" and therefore, cannot provide anti aging benefits. (Complaint at ¶¶ 20, 27, 8).

## A.    **The Complaint Misrepresents the Packaging**

A problem with the first premise is that it misstates what Defendant's advertising actually says.  Nowhere do the Products ever state that collagen by itself provides anti-aging benefits.  Rather, the Products' label states that the *Products themselves*, which are formulated with multiple functional ingredients, provide "ADVANCED ANTI-AGING".  The Products' labeling clearly state that the Products are a formula to include "Alguronic Acid [and] Vegan Collagen" and "Algae Oligosaccharides + Collagen." *See* complaint at ¶ 22.  The words "ANTI-AGING" do not appear anywhere near the word "collagen," but appear at the top of the package while the words "vegan collagen" appear near the bottom.  *See id.* In other words, Plaintiff invents a representation that Defendant never makes. Plaintiff's misstatement of the claims should be ignored in favor of what the label claims actually say. *See Amidax Trading Grp*. v. S.W.I.F.T. SCRL, 671 F.3d 140, 146–47 (2d Cir.2011) ("where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true"). *See also Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (Cal.App.2003) ("the primary evidence in a false advertising case is the advertising itself").

---

[1] Capitalized terms not defined herein shall be given the definition set forth in the Complaint.

Plaintiff never alleges that the Products themselves fail to provide anti-aging benefits. Instead she says that vegan collagen, which is but a single ingredient in the Products, does not deliver anti-aging benefits. Thus, the Complaint fails to state a claim for false advertising because it fails to allege that the actual advertising is false. *See Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*, No. CV1701875MWFMRWX, 2017 WL 4286577, at \*4 (C.D. Cal. Sept. 20, 2017) ("Where statements or depictions of ingredients on packaging are truthful, as demonstrated by a review of the packaging at issue here, courts may dismiss claims that those statements or depictions are misleading") (citing Hadley v. Kellogg Sales Co., 243 F. Supp. 3d 1074 (N.D. Cal. 2017)).

### B.      The Complaint Does not and Cannot Plead Facts showing the Products do Not Perform as Advertised

Plaintiff's second premise that "[T]he molecules in topically-applied collagen are too large to fit through the uppermost layer of the skin" and therefore, cannot provide anti-aging benefits also is not plausible. (Complaint at ¶¶ 20, 27, 8). The second premise contradicts the other allegations of the Complaint, contradicts the very sources the Complaint relies on, and fails to acknowledge the fact that the Products are advertised as a complete formula of multiple functional ingredients, which together provide the advertised anti-aging benefits. Plaintiff's second premise requires the Court to accept three assumptions, each of which is obviously false and implausible as demonstrated by the other allegations of the Complaint and the sources it incorporates. Plaintiff's first assumption is that intact animal collagen molecule allegedly cannot penetrate the outermost layer of the skin therefore the vegan collagen and other ingredients in the Products also cannot penetrate this outermost layer. This assumption is not logical, plausible, or warranted and, in fact, is disproven by other allegations in the Complaint.

The second assumption is that in order to have anti-aging benefits, an ingredient must penetrate the outermost layer of the skin.  Even assuming it is true that intact animal collagen cannot

penetrate the upper layer of skin, it does not necessarily follow that animal collagen does not have anti-aging benefits. For example, it is well known that cosmetics like eyeliner and lipstick do not penetrate the skin yet have anti-aging benefits by causing users to appear younger.  Furthermore, this assumption is disproven by the very article the Complaint relies on, which quotes one expert observing that "vegan collagen molecules are smaller than animal-based, making it actually capable of penetrating the top layer of the skin."  The article also notes that "regardless of size, vegan collagen still has the same moisturizing benefits of topical animal collagen, which can reduce the appearance of lines and wrinkles."  *See* Jenna Igneri, *What Exactly Is Vegan Collagen—And How Can It Benefit Your Skin?* https://coveteur.com/2021/01/21/vegan-collagen/, a true and correct copy of which is attached as Exhibit B to the Declaration of Steven W. Garff (cited in Complaint at ¶ 26).

The third assumption is that if one ingredient in the Products allegedly does not result in advertised benefits, the other ingredients in the Products and the formula as a whole cannot have this effect. This assumption is disproven by Plaintiff's own sources as well. Indeed, the very source cited by Plaintiff specifically discusses one of the Products and notes that the Products are based on a formula with other ingredients providing anti-aging benefits, not just from the collagen. *See id.* ("Additionally, algae-derived agronomic acid minimizes the appearance of lines and wrinkles while ceramides and Mary thistle hydrate and support the skin's barrier"). Furthermore, the Products' own packaging makes it clear that the Products work as a formula combining many functional ingredients. See the photos of the packaging attached as Exhibit A to the Declaration of Steven W. Garff ("A gentle restorative cream formulated for all skin types… The combination of Active Vegan Collagen*, Alguronic Acid, Calendula, & other soothing agents is designed to visibly reduce redness & the look of irritated skin, protect moisture retention restoring bounce and resilience"). And the Products list numerous functional ingredients on their packaging. *See id.*

Furthermore, the Complaint is devoid of any facts that even apply to Defendant's Products and its representations about them. Indeed, the only source cited in the Complaint that refers to any of the Products praises this Product as one of its "Favorite Vegan Collagen and Collagen-Boosting Products" and notes that the Product's formula "strengthens and conditions the skin overnight, leaving it smoothed and supple by the morning" and "minimizes the appearance of lines and wrinkles" as well as being able to "hydrate and support the skin's barrier." *See id*.

Because the Complaint does not and cannot plead facts showing that the Products and their ingredients do not penetrate the outer layer of the skin and cannot plead facts showing that penetration is even necessary for anti-aging benefits, the Complaint's entire theory of falsity is implausible, and the Complaint therefore does not state a claim.

### C.      The Complaint is filled with Other Fatal Defects

Plaintiff's broad definition of the Products as "included but not limited to" the three products actually referenced in the Complaint fails to comply with the Federal pleading requirements of Rule 8.  Finally, the Complaint fails to plead a breach of warranty and Plaintiff cannot bring nationwide class claims for breach of warranty.  Plaintiff also lacks standing to bring this action for products, which she does not allege she ever purchased.  For these reasons the Complaint should be dismissed in its entirety as a matter of law.

## II.      ARGUMENT

### A.      Legal Standard

#### 1.      The FAC Fails to State a Claim Under Rule 8

When considering a Rule 12(b)(6) motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986); (cited in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And even when a complaint

contains non-conclusory factual averments, it will survive a motion to dismiss only if it contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Here, to survive this Motion, the factual, non-conclusory allegations of each of the individual claims must set forth "more than a sheer possibility that [Defendant] acted unlawfully." *Id.*

The complaint fails to meet these requirements because it fails to plead any facts showing that the actual representations on the labels of the Products are false and it fails to plead any facts showing that a reasonable consumer plausibly could be misled by any statement on the Products' packaging. Furthermore, the Complaint's definition of "the Products" runs afoul of Rule 8 on its face. The Complaint defines, "Algenist Collagen Products include, but are not limited to, Algenist Genius Collagen Calming Relief, Algenist Genius Liquid Collagen, and Algenist Genius Sleeping Collagen." Complaint at ¶ 1, fn. 1. This insertion of "include, but are not limited to," cannot be made in light of Rule 8's requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." No description of these unmentioned products, what representations are made about them, or how these representations may be false is ever mentioned in the Complaint. Thus, the Complaint cannot do anything more than raise the "sheer possibility that [Defendant] acted unlawfully" and is subject to dismissal. *Twombly*, 550 U.S. at 570.

Furthermore, because this is an action under New York's General Business Law Sections 349 and 350, Plaintiff's claims are governed by the "reasonable consumer standard," meaning the challenged conduct must be "materially deceptive or misleading to a reasonable consumer acting reasonably under the circumstances.'" *Nelson v. MillerCoors*, LLC, 246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017) (internal citations and quotations omitted). That means that Plaintiff must plausibly allege that a reasonable consumer would likely be deceived by the Products "resulting in an actual injury to money or property." *Id.* at 673. Plaintiff's Complaint cannot survive this Motion to Dismiss

because it fails to plead plausible facts showing a reasonable consumer could be mislead by the Products in a material way.

### 2. The Court may properly consider the contents of the Product packaging and articles cited in the Complaint in deciding a Rule 12(b)(6) motion because they are integral documents to the Complaint.

Although a court's analysis on a Rule 12(b)(6) motion generally is limited to the contents of the complaint, a court may nevertheless consider materials "attached to the complaint as an exhibit or incorporated in it by reference . . . , matters of which judicial notice may be taken . . . , or documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). A court also may consider documents that are integral to a complaint's allegations. "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991) (a plaintiff cannot "evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach [an integral document] or to incorporate it by reference").

Thus, the Court may consider the actual packaging for the Products, including the exemplars already on the face of the Complaint (*See* Complaint at ¶ 22) as well as the true and correct photographs with more legible versions of these packages, which includes the entire box for all three products, attached as Exhibit A to the Declaration of Steven W. Garff. The Court may also consider the actual content of the articles referenced and cited in the Complaint, on which Plaintiff relies to support her allegations.

**B.** **The Complaint's Allegations are Contradicted by the Actual Representation as it Appears on the Products**

The Complaint fails to show falsity because it misrepresents and misquotes the very representation that it claims to be false.  The Complaint states that Defendant labels its Products as containing "vegan collagen' **that** provides 'advanced anti-aging' benefits." Complaint at ¶¶ 9, 10, 27 (emphasis added).  But the actual representation from the packaging taken as a whole is that the Products themselves, including all of the ingredients in the Products, deliver these benefits.  The representation quoted in the Complaint is entirely absent from the actual packaging.  *See* the images from the actual packaging of the Products appearing in the Complaint at ¶22.  Indeed, in one allegation in the Complaint, Plaintiff contradicts herself and accurately describes what the Products actually say. *See id.* ("the products are touted as providing these anti-aging benefits"). This is the actual representation, and the Complaint fails to allege a single fact showing that the Products themselves are incapable of providing anti-aging benefits or that the Products themselves do not perform as advertised. The actual representation on the label should control, not Plaintiff's disputatious dissection of this representation.  *Fed. Trade Comm'n v. Adept Mgmt. Inc.*, No. 1:16-CV-00720-CL, 2018 WL 4623152, at *1 (D. Or. Sept. 25, 2018) (In the false advertising context, "it is necessary 'to consider the advertisement in its entirety and not to engage in disputatious dissection. The entire mosaic should be viewed rather than each tile separately'") (quoting *Bronson Partners, LLC*, 564 F. Supp. 2d at 125); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015). ("'The entire mosaic' is 'viewed rather than each tile separately'") (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, No. 6–CV–14245, 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007); *Melendez v. ONE Brands, LLC*, No. 18CV06650CBASJB, 2020 WL 1283793, at *6 (E.D.N.Y. Mar. 16, 2020) (same). *See also Amidax Trading Grp.* v. S.W.I.F.T. SCRL, 671 F.3d 140, 146–47 (2d Cir.2011) ("where a conclusory allegation in the complaint is contradicted by a document attached to the

complaint, the document controls and the allegation is not accepted as true"); *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (Cal.App.2003) ("the primary evidence in a false advertising case is the advertising itself").

Furthermore, the Products' labeling further explains that it is the formula itself and not the vegan collagen ingredient alone that provides the advertised benefits. The Product notes that it is "a collagen-based ***formulation*** for a more youthful appearance" and notes that "[t]his unique ***dual-phase formula*** suspends microbeads of microalgae oil in a vegan plant collagen water and plant collagen amino acids." *See* the photos of the Products attached to the Declaration of Steven W. Garff, filed concurrently herewith (emphasis added). Any confusion that could possibly come from Plaintiff's misinterpretation of the label as claiming that vegan collagen alone is responsible for the antiaging benefits is dispelled by the package and cannot be the basis for a false advertising claim. *Melendez*, 2020 WL 1283793, at *6 ("If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous. If so, the clarification can defeat the claim") (quoting *Davis v. Hain Celestial Grp., Inc.,* 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018).

**C.    The Complaint Fails to Plead Any Facts Showing that the Products do Not Deliver the Promised Benefits**

Even accepting the Complaint's misquote of the Products' label, the Complaint fails to show that its own strained characterization of Defendant's advertising is false. To get to the conclusion that the Products do not have anti-aging benefits, Plaintiff must assume that if collagen obtained from animals cannot penetrate the skin, the vegan collagen amino acids, as contained in the Products, also cannot penetrate the skin.  Plaintiff must also assume that something that does not penetrate the outermost layer of the skin cannot possibly result in anti-ageing benefits. And Plaintiff must assume that the Products do not contain other ingredients that, acting alone or together, produce anti-aging

benefits. Not only are each of these assumptions unsupported with any facts, but they are contradicted by the facts in the Complaint and its relied-on sources themselves.

        **1.**        **Plaintiff's conclusion that vegan collagen cannot penetrate the skin is without factual support and is contradicted by the sources she relies on**

The Complaint cites several sources in support of Plaintiff's contention that the collagen molecule when obtained from animal sources is too large to penetrate the outermost layer of the skin. Complaint at ¶¶ 8, 20. The problem is that, as alleged in the Complaint, the Products do not contain animal collagen. Instead, as stated clearly on their labels, they contain vegan collagen/collagen amino acids. To try to bridge this gap, the Complaint inaccurately states that vegan collagen is created as follows:

> To create "vegan collagen" human genes that code for collagen are added to the genetic structure of bacteria or modified yeasts. The yeast or bacteria then starts to produce the building blocks of human collagen. Typically pepsin, a digestive enzyme is added to help structure the collagen molecule to mimic the exact structure of human collagen. ___**Resultingly, "vegan collagen" is too large to penetrate the skin and provide any antiaging benefits."**___

Complaint at ¶ 26 (emphasis added). In support of this inaccurate last sentence, Plaintiff only cites one source, a blog article by Jenna Igneri titled *What Exactly Is Vegan Collagen—And How Can It Benefit Your Skin?* A true and correct copy of this blog article is attached as Exhibit B to the Declaration of Steven W. Garff.  But this article does not say what Plaintiff claims it says, nor does it even support the Complaint's conclusion. Rather, this is what Plaintiff's only source for this claim actually has to say about it:

> According to Vanessa Thomas, cosmetic chemist and founder of Freelance Formulations, it's too new and too rare to really know just yet, but because it's so similar in structure to animal collagen, Doyle says that it likely would have the same issue of being too large a molecule to penetrate the skin. However, Tyler Moore, social media manager of vegan beauty brand Truly, says that vegan collagen molecules are smaller than animal-based, making it actually capable of penetrating the top layer of the skin.

> Regardless of molecule size, however, it still has the same moisturizing benefits of topical animal collagen, which can reduce the appearance of lines and wrinkles, at least temporarily.

"Even if not penetrable, it still has the humectant benefits, and in this case it's more a result of the structure of the collagen, not the size," says Shamban.

*Id.* (emphasis added). This is a very long way from supporting Plaintiff's unequivocal conclusion that "vegan collagen" is too large to penetrate the skin. The article quotes one person as saying that "it's too new and too rare to really know just yet" but that "it *likely* would have the same issue of being too large a molecule to penetrate the skin" (emphasis added).   But then the article quotes another source, which completely contradicts Plaintiff's entire complaint, observing that "vegan collagen molecules are smaller than animal-based, making it actually capable of penetrating the top layer of the skin." The article notes that "regardless of size, vegan collagen still has the same moisturizing benefits of topical animal collagen, which can reduce the appearance of lines and wrinkles." Indeed this article, which is Plaintiff's sole support for its claim that vegan collagen cannot penetrate the skin and cannot have anti-aging benefits, explicitly recommends one of the Products as one of their "Favorite Vegan Collagen and Collagen-Boosting Products" and notes that the Product "strengthens and conditions the skin overnight, leaving it smoothed and supple by the morning" and "minimizes the appearance of lines and wrinkles" as well as being able to "hydrate and support the skin's barrier." *See id.*

In short, the Complaint's sole source on which it hinges its entire theory of falsity, does not say what Plaintiff claims it says, explicitly contradicts the Complaint, and says that vegan collagen may indeed penetrate the skin.  But regardless of molecule size or whether vegan collagen penetrates the skin, vegan collagen provides anti-aging benefits, such as winkle reduction. The article then recommends one of the Products *by name* as providing anti-aging benefits.  Plaintiff's entire falsity theory is annihilated by its own source.  *See Oppenheimer*, 936 F.2d at 762.  *See also Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 455 (E.D.N.Y. 2013).

-10-

2.      **Plaintiff's theory about vegan collagen does not even apply to the vegan collagen in the products**

Even if Plaintiff's theory of falsity with regards to bacteria and yeast produced collagen was not completely undermined by Plaintiff's own source, it would not even apply to Defendant's product anyway. The Complaint never alleges that the manufacturing process it describes is the process whereby Defendant creates its vegan collagen. Instead, the Complaint refers to what it contends is common practice in the industry and what is "[t]ypically" done. Complaint at ¶ 26.  This is not the same as alleging that Defendant does this. And indeed, the packaging of the Products makes clear that Defendant uses a completely different process for its vegan collagen.

> Vegan Collagen is a new innovative technology created by binding together corn, soy and wheat protein fibers resulting in vegan amino acids that structurally mimic collagen that provides a function similar to animal-derived collagen.

*See* the packaging photos attached as Exhibit A to the Declaration of Steven W. Garff, filed concurrently herewith. Likewise, Plaintiff's own relied on source describes the vegan collagen in Defendant's Products as the "brand's exclusive active vegan complex—which binds together plant-based protein chains to piece together vegan amino acids." *See* Jenna Igneri, *What Exactly Is Vegan Collagen—And How Can It Benefit Your Skin?* attached as Exhibit B to the Declaration of Steven W. Garff.

There are no allegations in the Complaint that show that the actual process Defendant uses to create its vegan collagen results in a molecule that is too large to penetrate the skin. Nor is there is any plausible reason to believe that the amino acids themselves are too large to penetrate the skin given that the article cited by the Plaintiff states that vegan collagen molecules in fact penetrate the skin. Thus, there is no falsity under Plaintiff's theory. There are no set of facts that actually supports her conclusion, which at most raises the "sheer possibility" that Defendant acted wrongfully. *See Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (stating "[f]actual allegations must be enough to raise a

right to relief above the speculative level").  The most that can be said is that "the conclusion on which Plaintiff bases her allegation that Defendant's representations about the Product are false *requires a leap from the existing scientific research*. As pled in the [c]omplaint, this leap is made through nothing but speculation." *Spector v. Mondelez Int'l, Inc.*, No. 15 C 4298, 2017 WL 4283711, at *5 (N.D. Ill. Sept. 27, 2017) (quoting *Hodges v. Vitamin Shoppe, Inc.*, No. CIV.A. 13-3381 SRC, 2014 WL 200270, at *4 (D.N.J. Jan. 15, 2014) (emphasis in Spector)).

### 3. The Complaint alleges no facts supporting its assumption that molecules must penetrate the outer layer of the skin to result in anti-aging benefits, and its own relied on sources flatly contradict this assumption

The Complaint just assumes, without any factual support, that if something, such as an animal collagen molecule cannot penetrate the skin, then it cannot possibly provide anti-aging benefits. Not only is this assumption without any factual support in the Complaint, it's inconsistent with common sense and is flatly contradicted by Plaintiff's sources. One of those sources observes:

> Topical collagen never took off because of its large molecular weight, which makes it too large for it to penetrate effectively into the skin... ***However, because topical collagen is a great humectant, it's an effective moisturizer that can improve the appearance of lines and wrinkles and is still widely used in skin care.***

*See* Jenna Igneri, *What Exactly Is Vegan Collagen—And How Can It Benefit Your Skin?* attached as Exhibit B to the Declaration of Steven w. Garff (cited in Complaint at ¶ 26) (internal quotations omitted) (emphasis added). And in specific reference to vegan collagen, the article explains, "[r]egardless of molecule size, however, it still has the same moisturizing benefits of topical animal collagen, which can reduce the appearance of lines and wrinkles." *Id.*  Plaintiff's theory therefore is not plausible according to her own source.

Not only does her own source contradict the allegations of her Complaint, but common sense and the universal experience of human beings does as well. Anti-aging benefits in a cosmetic means nothing more than appearing younger.  Every day, millions, and perhaps billions of people use eye

liner, lip stick, and other cosmetics to appear younger.  It is well known that lipstick and eye liner do not have anti-aging effects by penetrating the skin.  Rather, they change a person's appearance, making them look younger, by highlighting and changing the color of their lips and skin, and thereby have an anti-aging effect.  This is exactly the effect that Ignery describes in her article.  "Regardless of molecule size, however, it still has the same moisturizing benefits of topical animal collagen, which can reduce the appearance of lines and wrinkles." *Id.*

> **4.** **The Complaint's theory of falsity ignores the fact that the Products contain multiple functional ingredients, not vegan collagen alone**

Even if the Complaint was correct—contrary to its own sources—that  vegan collagen cannot penetrate the skin, and even if it was right—despite there being no factual support for this conclusion—that Defendant's vegan collagen cannot penetrate the skin, and even if it was right— again, contrary to its own sources—that materials must penetrate the skin to have any anti-aging benefits, the Complaint would still fail because it ignores the fact that the Products have numerous functional ingredients and there are no allegations that these formulas do not result in the advertised effects.

The Products' labeling explains that the Products' formulas contain multiple functional ingredients and that it is the combination of these functional ingredients in the Products that have anti-aging benefits. *See* the photos of the Products included in the Complaint at ¶ 22 and those attached as Exhibit A to the Declaration of Steven W. Garff, filed concurrently herewith (explaining the Product is "a collagen-based ***formulation*** for a more youthful appearance" and noting that "[t]his unique ***dual-phase formula*** suspends microbeads of microalgae oil in a vegan plant collagen water and plant collagen amino acids"). See also the numerous ingredients listed on the packaging including functional ingredients. *See id.*

Likewise, the article relied on by Plaintiff specifically notes that the Products are based on a formula with other ingredients providing anti-aging benefits, not just from the collagen. *See* Jenna Igneri, *What Exactly Is Vegan Collagen—And How Can It Benefit Your Skin?*, attached as Exhibit B to the Declaration of Steven W. Garff (cited in Complaint at ¶ 26) ("Additionally, algae-derived agronomic acid minimizes the appearance of lines and wrinkles while ceramides and Mary thistle hydrate and support the skin's barrier").

The Complaint fails to plead any facts showing that the Products themselves, including these other functional ingredients combined into a formula, do not provide these benefits.  Thus, there can be no claim for false advertising.  *See Kwan v. SanMedica Int'l, LLC*, No. 14-CV-03287-MEJ, 2014 WL 5494681, at *3 (N.D. Cal. Oct. 30, 2014) ("In the false advertising context, an advertising claim is false if it has 'actually been disproved,' that is, if the plaintiff can point to evidence that directly conflicts with the claim") (quoting *Eckler v. Wal–Mart Stores, Inc.*, 2012 WL 5382218, at *3 (S.D.Cal. Nov. 1, 2012).  Plaintiff fails to cite a single study or article showing that the ingredients or formula contained in the Products do not produce the advertised benefit.

A similar effort to attack a specific ingredient, while failing to allege facts showing that the product itself did not meet the label claims doomed a similar false advertising complaint in *Aloudi v. Intramedic Rsch. Grp., LLC*, No. 15-CV-00882-HSG, 2016 WL 1569981 (N.D. Cal. Apr. 19, 2016), aff'd, 729 F. App'x 514 (9th Cir. 2017).  There, the plaintiff used scientific studies to attack the efficacy of chlorogenic acid in the product based on a study of chlorogenic acid as well as the conclusion about its effect in coffee, rather than showing that the precise formula in the product was ineffectual.  However, the court noted that the problem with these allegations is that they ignore and do not directly apply to the formula that the product contained:

> Plaintiff's conclusory observations regarding the physiques of Starbucks' clientele are unrelated to the efficacy of Defendant's Product, given that the Product contains different amounts of chlorogenic acid and other ingredients not found in Starbucks

coffee. Plaintiff's speculation is insufficient to remedy the defects previously identified
by the Court.

(*Id* at *5.)  The Ninth Circuit was even more explicit on appeal: "None of these allegations involves scientific testing of the actual JavaSLIM product or a product with the same active ingredients as JavaSLIM, in a dose similar to that in JavaSLIM." *Aloudi*, 2017 WL 6397259 at *2 ("Aloudi alleges conclusorily that rapid weight loss is 'medically impossible without drastic medical intervention or serious illness,' and that 'if chlorogenic acid actually caused 'rapid and significant weight loss' every customer in line at Starbucks would be supermodel-thin,' as chlorogenic acid, JavaSLIM's weight loss ingredient, may be found in larger quantities in regular brewed coffee than in JavaSLIM. Aloudi's complaint also refers to a mouse study allegedly showing that chlorogenic acid contributes to increased insulin resistance and fatty liver disease. None of these allegations involves scientific testing of the actual JavaSLIM product or a product with the same active ingredients as JavaSLIM, in a dose similar to that in JavaSLIM").  *See also Kwan*, 2014 WL 5494681 at *4; *Eckler*, 2012 WL 5382218 at *2–3; ("On reviewing those studies which the plaintiff contended supported the false nature of the contested product's statements, the court concluded that such studies did not clear the heightened particularity bar. The problems with the studies that the court highlighted were twofold: (1) none of the studies referenced by plaintiff involved the disputed product, and (2) the studies to which plaintiff cited were all osteoarthritis studies, a condition that the disputed product did not represent itself as helping to alleviate or improve").

The Complaint here fails for the same reason. None of the sources in the Complaint analyze or even reference Defendant's Product, that is except for one of these sources, which praises the Products as one of its "Favorite Vegan Collagen and Collagen-Boosting Products" and notes that the Product's formula  "strengthens and conditions the skin overnight, leaving it smoothed and supple by the morning" and "minimizes the appearance of lines and wrinkles" as well as being able to "hydrate and support the skin's barrier." *See* Exhibit B to Garff Dec. The facts in the Complaint do

not actually apply to the Products, or the manner, amounts, or forms in which the formula of differing ingredients are contained in the Products.  Thus, there is no falsity.  It is Plaintiff's pleading burden to state facts that prove the actual representation made by the Products is actually false.  This is never done.  Simply raising the "sheer possibility that a defendant has acted unlawfully" is insufficient to state a claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 66, 678 (2009).

> **D.     Any Argument that Consumers Are Misled by "Vegan Collagen" is Implausible in Light of Other Allegations in the Complaint and Fails the Reasonable Consumer Test**

Plaintiff contends that "[s]ome manufacturers, like Defendant, claim that their products contain 'vegan Collagen,' made of genetically engineered microorganisms, such as yeast and bacteria. However, because collagen is naturally an animal byproduct, it's impossible for there to be a 'vegan collagen variant.'"  Complaint at ¶ 7.  It is not clear from the Complaint if Plaintiff is also basing her claims for false advertising on this theory. However, if she is, this hair-splitting definitional theory cannot provide a basis for her false advertising claims for at least two reasons.

First, this theory contradicts and is rendered implausible by other allegations in the Complaint. Indeed, later in the Complaint and in an effort to argue that the vegan collagen in the Products cannot possibly penetrate the skin, Plaintiff describes vegan collagen in a way that equates it with any other form of collagen:

> To create "vegan collagen" human genes that code for collagen are added to the genetic structure of bacteria or modified yeasts. The yeast or bacteria then starts to produce the building blocks of human collagen. Typically pepsin, a digestive enzyme is added to help structure the collagen molecule **to mimic the exact structure of human collagen**. Resultingly, "vegan collagen" is too large to penetrate the skin and provide any antiaging benefits."

Complaint at ¶ 26 (emphasis added).  Plaintiff contends that this vegan uses human genes, contains all the component parts of collagen, and then even mimics "the exact structure of human collagen." *Id.*  To contend that the result is not animal collagen, but is chemically the same as animal collagen,

is splitting hairs at best.[2] But it is not grounds for false advertising, especially when the packaging and label are explicit that the Products contain "vegan collagen" and explains with an asterisk exactly what that means.[3]

Indeed, the marketplace is replete with products calling themselves things like vegan cheese, vegan milk, and even vegan meat. No reasonable consumer is misled by such descriptions. No reasonable consumer thinks that "vegan" products must contain animal milk or animal meat. In this case, this is even more true, because as Plaintiff explains, vegan collagen consists of the same building blocks as human collagen. *See* Complaint ¶ 26.[4] Thus, the second reason that Plaintiff's argument fails is that, even if it were technically correct, it would fail the reasonable consumer test.

"The reasonable consumer standard applies to section 349 and 350 claims, meaning challenged conduct must be 'materially deceptive or misleading to a reasonable consumer acting reasonably under the circumstances.'" *Nelson v. MillerCoors*, LLC, 246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017) (quoting *Dash v. Seagate Tech (U.S.) Holdings, Inc*., 27 F.Supp.3d 357, 360 (E.D.N.Y. 2014) (internal citations and quotations omitted). That means that Plaintiff must plausibly allege that a reasonable consumer would likely be deceived by the Products "resulting in an actual injury to money or property." *Nelson*, 246 F. Supp. 3d at 673-76 (granting motion to dismiss); *Bowring v. Sapporo U.S.A., Inc*., 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017) ("a court may determine

---

[2] As already explained above, the process that Plaintiff describes is not actually the process used by Defendant, which is described on the Products' packaging.  However, for the purposes of this argument, this distinction is not meaningful, as both processes replicate the components and functions of collagen.

[3] Plaintiff cannot have it both ways here. If the product contains the intact collagen molecule, which is too large to penetrate the skin, then it cannot be falsely advertised as a "vegan collagen variant." If on the other hand, the product contains the vegan collagen building blocks, as they are in fact advertised to do, then the Complaint lacks facts showing that these ingredients cannot penetrate the skin, and the Complaints falsity theory fails.

[4] Contrary to the Complaint, there is really no such thing as "animal collagen," because the collagen found in different species differs. There is bovine collagen, human collagen, porcine collagen, piscine collagen, etc.

as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer"); *Avola v. Lousiana-Pacific Corp.*, 991 F. Supp. 2d 381, 396-97 (E.D.N.Y. 2013) (granting motion to dismiss).  To state a claim for false advertising under the GBL, Plaintiff must allege facts to plausibly show that the label of Products was "misleading in a material way." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 142 (E.D.N.Y. 2018).  The Complaint offers no explanation as to how a reasonable consumer could possibly be mislead by the Products' use of the term "vegan collagen."

Furthermore, even if Plaintiff could show that a reasonable consumer would be confused by the term "vegan collagen," that would not be enough to show false advertising. In assessing whether a label statement is deceptive, courts consider whether what's really going on is consumer confusion or simple ambiguity, and, if so, whether "another portion of the label would dispel" the confusion. *Melendez v. ONE Brands, LLC*, 2020 WL 1283793, at *6 (E.D.N.Y. Mar. 16, 2020). Allegations of deception are not plausible where, as here, the challenged claim is, itself, qualified (like with an asterisk, as it is in this case), and the explanation further dispels any possible confusion that all ingredients are non-synthetic. *Hairston v. S. Beach Beverage Co*., No. CV 12-1429-JFW DTBX, 2012 WL 1893818, at *1 (C.D. Cal. May 18, 2012) (any ambiguity about the product ingredients can be dispelled by reviewing the ingredient list); *Truxel v. Gen. Mills Sales, Inc*., 2019 WL 3940956, *4 (N.D. Cal. Aug. 13, 2019) ("Plaintiffs cannot plausibly claim to be misled about the sugar content of their cereal purchases because Defendants provided them with all truthful and required objective facts ... the actual ingredients were fully disclosed and it was up to the Plaintiffs, as reasonable consumers, to come to their own conclusion about whether or not the sugar content was healthy for them"); *Workman v. Plum, Inc*., 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (there can be no deception if the ingredient list discloses the product's contents, consequently resolving "any potential ambiguity"); *Cheslow v. Ghirardelli Chocolate Co.,* 445 F. Supp. 3d 8, 20 (N.D. Cal. 2020) (allegations that

consumers were deceived into believing white baking chips contained chocolate were implausible as a matter of law because "Plaintiffs and the general consuming public are not free to ignore the ingredient list that does not include the words chocolate or cocoa").

In this case, the words "vegan collagen*" are accompanied by an asterisk. This asterisk explains:

> * Vegan Collagen is a new innovative technology created by binding together corn, soy and wheat protein fibers resulting in vegan amino acids that structurally mimic collagen that provides a function similar to animal- derived collagen.

*See* the packaging photos attached to the Declaration of Steven W. Garff, filed concurrently herewith. Any possible confusion about vegan collagen is fully explained to the consumer.  *Melendez*, 2020 WL 1283793, at *6.

Finally, "To state a claim for false advertising under the GBL, plaintiff must allege facts to plausibly show that the label of Products was 'misleading in a material way.'" *Colella*, 348 F. Supp. 3d at 142.  The Complaint makes no attempt to explain how the fact that vegan collagen does not technically come from animals is material to consumers, especially when Plaintiff herself concedes the vegan collagen "mimic[s] the exact structure of human collagen."  Complaint at ¶ 26.  Even if Plaintiff's mistaken hair-splitting definition of collagen as opposed to vegan collagen were true, there can be no deception because the packaging is clear and explicit that it is vegan collagen and what this vegan collagen consists of.  *See McKinnis v. Kellogg USA*, No. CV07-2611ABC(RCX), 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) ("The front panel of the box clearly and accurately describes the product as a 'SWEETENED MULTI-GRAIN CEREAL,' not any sort of fruit-based cereal, and the side panel lists all of the ingredients, which do not include fruit").

### E.     Plaintiff Fails to Plausibly Allege Causation or Injury

Plaintiff has failed plausibly to allege that she suffered injury and damage, warranting dismissal of her claims. "Only by showing that plaintiffs in fact paid more for [the products] as a

result of [the challenged] labeling can plaintiffs establish the requisite elements of causation and actual injury under § 349." *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010). Conclusory allegations that plaintiff "was damaged by spending money on products he would not have purchased absent [defendant] concealing or misleading consumers about certain information is insufficient to allege injury." *Colella*, 348 F. Supp. 3d at 143. Although "overpayment or [payment of a] price premium" can constitute an injury, "[s]imply recit[ing] the word 'premium' multiple times in the[] Complaint does not make Plaintiffs' injury any more cognizable." *Id.*; *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (conclusory allegations of injury not supported by factual allegations were insufficient to state a claim under Sections 349 and 350); *Weiner v. Snapple Beverage Corp.*, 2011 WL 196930, at *3 (S.D.N.Y. Jan. 21, 2011) (injury not shown where "Plaintiffs have failed to allege sufficient facts to show that they in fact paid a premium for the 'All Natural' label"). At a minimum, a plaintiff is required to allege "facts regarding what the premium was, what price [s]he paid for the products, or the price of the non-premium products." *Colella*, 348 F. Supp. 3d at 143.

Plaintiff's vague and conclusory assertion that "Plaintiff and the Class Members would not have purchased Defendant's Products – or, at a minimum, would not have paid as much as they did to purchase them" and that she "spent money in the transaction that she otherwise would not have spent had she known the truth," without any supporting factual allegations, is insufficient. Complaint ¶ 47. As in *Colella*, "plaintiff pleaded no facts to support [her] assertion that plaintiff paid a premium price. As such, plaintiff's conclusory allegations are insufficient to identify a cognizable injury. Plaintiff, therefore, fails to state a claim for relief under Sections 349 and 350 of the NYGBL." 348 F. Supp. 3d at 143.

### F.   The Complaint Fails to State a Claim for Breach of Warranty

Absent plausible allegations of deception, Plaintiff's common-law claims (in this case breach

of warranty) fail as well.  *See DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 32 (2d Cir. 2014); *Derbaremdiker v. Applebee's Int'l, Inc.*, 2012 WL 4482057, at *5-8 (E.D.N.Y. Sept. 26, 2012). Furthermore, to state a claim for breach of express warranty, "a plaintiff must plead 'the exact terms of the warranty' identifying a factual statement that is 'specific and unequivocal.'" *Hernandez v. Johnson & Johnson Consumer Inc*., 2020 WL 2537633, at *6 (D.N.J May 19, 2020).  Plaintiff claims that Defendant made an express warranty by asserting that the "Products contain 'vegan' collagen' that will provide 'advanced anti-aging' benefits." Complaint ¶ 62.  As already discussed, the Products never make such a statement.  Therefore, there can be no express warranty for something the Products never even say.  Furthermore, the Complaint fails to plead any facts showing that the representation of "vegan collagen" or that the Products provide anti-aging benefits are in any way false.  *Reyes v. Crystal Farms Refrigerated Distribution Co*., 2019 WL 3409883, at *5 (E.D.N.Y. July 26, 2019) (where plaintiff failed to allege labeling statements of "made with real butter" and "made with fresh whole potatoes" were false or misleading, such statements could not form basis for express warranty). Nor do these statements even rise to the kind of specificity required for an express warranty. *Hernandez*, 2020 WL 2537633, at *6 (labeling statements that pill provided "rapid relief" or "fast relief" "d[id] not rise to the level of express warranty because the wording does not show the [products] provide faster relief than any other product").  Accordingly, Plaintiff's breach of express warranty claim, under New York law and the law of all fifty states, must be dismissed.

### G.    Plaintiff Lacks Standing for Products She Did Not Purchase

Plaintiff's Complaint purports to include three specific products (as well as her unspecified "include, but not limited to" products). Complaint at ¶ 1.  However, Plaintiff only claims to have purchased one of these Products, the Algenist Genius Collagen Calming Relief.  *See* Complaint at ¶ 11.  Absent special allegations (not present here), in the Second Circuit, a class action plaintiff lacks standing to pursue labeling claims against products "they did not purchase."  *DiMuro*, 572 F. App'x

at 29.  S*ee also Holve v. McCormick & Co., Inc*., 334 F. Supp. 3d 535, 548 (W.D.N.Y. 2018) (plaintiff

did not have Article III standing to pursue claims related to unpurchased products where there were

"no specific allegations regarding the purchase of any of the Other Products" and plaintiff "failed to

establish a causal connection between the Other Products and her injuries").  Therefore, Plaintiff's

Complaint as to the Algenist Genius Liquid Collagen and Algenist Genius Sleeping Collagen must

be dismissed.

### H.        Plaintiff Lacks Standing to Seek Injunctive Relief

"To maintain an action for injunctive relief, a plaintiff 'cannot rely on past injury ... but must

show a likelihood that he ... will be injured in the future.'"  *Berni v. Barilla S.p.A*., 964 F.3d 141, 147

(2d Cir. 2020) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998))

(ellipses in *Berni*).  "Moreover, such a threat of future injury must be 'actual and imminent, not

conjectural or hypothetical.'" *Id.*  (quoting *Summers v. Earth Island Institute*, 555 U.S. 488, 493, 129

S.Ct. 1142, 173 L.Ed.2d 1 (2009)).  *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct.

1660, 75 L.Ed.2d 675 (1983). "If the injury occurred in the past—or if some future injury is merely

conjectural or hypothetical—then plaintiffs will lack the kind of injury necessary to sustain a case or

controversy, and necessary to establish standing, under Article III." *Id.*  For this reason, the Second

Circuit has specifically precluded consumer fraud class action plaintiffs, such as the Plaintiff in this

case, from seeking injunctive relief:

> We note that past purchasers of a consumer product who claim to be
> deceived by that product's packaging—like the purchasers of Barilla
> pasta here—have, at most, alleged a past harm. Such a past harm is of
> the kind that is commonly redressable at law through the award of
> damages, which, it should be noted, is what Plaintiffs primarily sought
> in their complaint.

*Id.*  The Second Circuit explained its reasoning:

> For several reasons, past purchasers of a product, like the Barilla
> purchasers, are not likely to encounter future harm of the kind that
> makes injunctive relief appropriate. In the first place, past purchasers

are not bound to purchase a product again—meaning that once they become aware they have been deceived, that will often be the last time they will buy that item. Past purchasers do not have the sort of perpetual relationship with the producer of a consumer good that is typical of plaintiffs and defendants in Rule 23(b)(2) class actions. No matter how ubiquitous Barilla pasta may be, there is no reason to believe that all, or even most, of the class members—having suffered the harm alleged—will choose to buy it in the future.  But even if they do purchase it again, there is no reason to believe that all, or even most, of the class members will incur a harm anew. Supposing that they have been deceived by the product's packaging once, they will not again be under the illusion that the boxes of the newer pastas are filled in the same way as the boxes of the older pastas. Instead, next time they buy one of the newer pastas, they will be doing so with exactly the level of information that they claim they were owed from the beginning. A "fill-line" or some disclaimer language will not materially improve their position as knowledgeable consumers.

*Id.* (citations omitted).  *See also Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 274–75 (E.D.N.Y. 2021) (calling *Berni* "binding Second Circuit precedent" and similarly observing "Because plaintiff knows that the vitamins and minerals in the Simply Nourish Products are allegedly synthetic and that she will not purchase the Products in their current state, she cannot show an imminent risk of future deception and injury").  Here, Plaintiff concedes she knows the advertisements are allegedly false and would not have purchased the product had she known that. Complaint ¶ 47.   Thus, she cannot plausibly allege that she will purchase the Products again.  And even if she did, she would not be harmed for the very reasons explained by the Second Circuit.

## I.    Plaintiff Cannot Bring Nationwide Class Claims

Plaintiff seeks to bring nationwide class claims for her breach of warranty cause of action. However, in alleging nationwide applicability of this cause of action, Plaintiff does not even attempt to comply with the requirements of Rule 8.  The problem that the Complaint has is that breach of warranty has different notice/opportunity to cure perquisites and requirements, different statutes of limitation, and different elements across different states.  The Complaint fails to even allege that these diverse requirements are satisfied in each state. The Complaint gives no indication of what notice

Defendant can possibly have as to how it supposedly violated widely divergent statutory and common law causes of action across each of the 50 states, much less make allegations specific enough to enable Defendant to defend itself against the claim.  Thus, the Complaint's nationwide class allegations fail as a matter of law under Rule 8.  The situation is the same as that faced by the Central District of California in *Gunaratna v. Dennis Gross Cosmetology LLC*, 2020 WL 8509681 (C.D. Cal. Nov. 13, 2020). There the Plaintiff attempted to bring nationwide class claims for breach of express warranty, breach of implied warranty, violation of written warranty under the Magnuson Moss Warranty Act, violation of the implied warranty of merchantability under state law, and unjust enrichment (among others). ( *Id.* at *2.)  However, the court granted a motion to dismiss all of the nationwide class allegations as to each of these causes of action, observing, "Plaintiff fails to meet pleading requirements as to these claims, as the FAC's conclusory assertions offer no explanation as to how these state laws differ and include no facts showing how Defendant allegedly violated each of these laws." *Id.* at *7.  *See also Gray v. Bayer Corp*., Civ. Act. No. 08-4716 (JLL), 2011 WL 2975768, at *7 (D.N.J. July 21, 2011) ("Litigating Plaintiff's claims based on law from potentially fifty-one different jurisdictions would likely require a multitude of mini-trials to determine [defendant's] liability to each statewide group of consumers. Such a procedure would be an inefficient use of judicial resources and would 'defeat the purported economies of class treatment'") (quotation omitted).

Finally, Plaintiff has failed to show how she has standing to bring nationwide class claims when laws of other states, and not New York, apply. *Gunaratna*, 2020 WL 8509681, at *7; *Razuki v. Nationstar Mortg., LLC*, 2020 WL 1478374, at *3 (N.D. Cal. Mar. 26, 2020) ("at least one named plaintiff must have Article III standing to bring a claim under the laws of each state included in the alleged multi-state class. This forecloses claims on behalf of a multi-state class at this time.  Razuki

and Miller are California residents and property owners.  There is no allegation that they were injured by Nationstar's alleged conduct in any state other than California.")

## III.   <u>CONCLUSION</u>

For the reasons above, Defendant respectfully requests that its Motion to Dismiss be granted in its entirety and the Plaintiff's case be dismissed with prejudice.

Dated: February 25, 2022                Respectfully submitted,

/s/ *Daniel J. Cohen*

Daniel J. Cohen
**NEWMAN, SIMPSON & COHEN, LLP**
32 Mercer Street
Hackensack, NJ  07601
Telephone: (201) 487-0201
 Facsimile: (201) 487-8570