UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CATHERINE NGUYEN, *individually and on behalf of all others similarly situated*,

                              Plaintiff,

                    -v.-

ALGENIST LLC,

                              Defendant.

22 Civ. 13 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Enticed by the promise of age-defying effects, Catherine Nguyen ("Plaintiff") purchased a skincare product from Algenist LLC ("Defendant"). Unhappy with her results after using the product, Plaintiff filed this putative class action against Defendant for false advertising and related claims. Her allegations center on one of the product's ingredients: vegan collagen, a substance designed to mimic a naturally occurring protein found in skin, hair, and other parts of the body. According to Plaintiff, vegan collagen cannot possibly deliver the results Defendant advertises. For the reasons that follow, the Court grants Defendant's motion to dismiss.

**BACKGROUND**[1]

**A.    Factual Background**

Collagen is a structural protein that occurs naturally in the human body.

---

[1]    This Opinion draws its facts from the Complaint (Dkt. #1 ("Compl.")), the well-pleaded allegations of which are taken as true for the purposes of this Opinion.  The Court sources additional facts from the Declaration of Steven W. Garff in support of Defendant's motion to dismiss and the exhibits attached thereto (Dkt. #24 ("Garff Decl.")), including images of the products and packaging at issue in this case, which

(Compl. ¶ 3).  It is a main building block for bones, skin, hair, muscles, tendons, and ligaments, and gives the skin "a firm, plump, and youthful look." (*Id.* at ¶¶ 3, 15).  A decrease in collagen production — which occurs naturally over time and can be accelerated by factors like smoking and sun exposure — undermines the skin's structural integrity, leading to wrinkles, sagging skin, and weakened joint cartilage.  (*Id.* at ¶¶ 4, 16-17).  As a result, many consumers seek out collagen-based beauty products that are designed to combat the effects of natural collagen loss.  (*Id.* at ¶ 18).

Defendant is a Delaware corporation that sells, among other things, products containing a proprietary vegan collagen.  (Compl. ¶¶ 1, 12).  Three of Defendant's products are named in this suit: (i) Algenist Genius Collagen Calming Relief ("Calming Relief"), (ii) Algenist Genius Liquid Collagen ("Liquid Collagen"), and (iii) Algenist Genius Sleeping Collagen ("Sleeping Collagen") (collectively, the "Products").  (*Id.* at ¶ 1 n.1).  The Products' packaging features Algenist branding and descriptive phrases.  (*See* Garff Decl., Ex. A).  Plaintiff alleges that each product's front label features the words "ADVANCED ANTI-AGING." (Compl. ¶ 27).  The name of each product appears immediately under that phrase.  (*See* Garff Decl., Ex. A).  The lower half of the labels feature the

---

images the Court may consider because the Complaint incorporates them by reference.  *See Hu* v. *City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #23); to Plaintiff's memorandum of law in opposition to Defendant's motion as "Pl. Opp." (Dkt. #29); and to Defendant's reply memorandum as "Def. Reply" (Dkt. #32).

word "ALGENIST," in large letters and, in smaller letters below that, either "Alguronic Acid + Collagen" or "Alguronic Acid + Vegan Collagen."  (*Id.*).



*Calming Relief (front)*



*Liquid Collagen (front)*



*Sleeping Collagen (front)*

Plaintiff, who is a New York citizen, purchased Calming Relief at a TJMaxx store in New York City in April 2021.  (Compl. ¶ 11).  The Complaint does not specify how much Plaintiff paid for the product.  In making her decision to purchase Calming Relief over comparable products, Plaintiff relied on the assertions made on the product's label and packaging.  (*Id.*).  The packaging led her to believe that Calming Relief contained "collagen" and/or

3

"vegan collagen" that would provide "advanced anti-aging benefits." (*Id.*).
Based on these representations, Plaintiff paid "a substantial price premium" for
the product. (*Id.*).

After her purchase, Plaintiff used Calming Relief as directed. (Compl.
¶ 11). To her dismay, she did not enjoy any "anti-aging or skin-firming
benefits" as a result. (*Id.*). She asserts that the Products cannot possibly offer
those benefits because the molecules in topically-applied collagen — vegan or
otherwise — cannot penetrate the skin's top layer. (*Id.* at ¶¶ 8-9, 26-27). This
is because animal-based collagen has a molecular weight of 300 kilodaltons
and thus is "too large to be absorbed into the skin when applied in a cream."
(*Id.* at ¶ 8). Vegan collagen has the same issue, claims Plaintiff, because it
"[t]ypically … mimic[s] the exact structure of human collagen." (*Id.* at ¶ 26). In
short, Plaintiff believes that Defendant's advertising is "false, misleading, and
deceptive" (*id.* at ¶ 32), because "no topical collagen product can stimulate and
increase natural collagen production" (*id.* at ¶ 20).

Plaintiff claims that, had she known that the representations on Calming
Relief's label were untrue, she would not have paid a price premium for it.
(Compl. ¶ 11). Despite her disappointment, she intends to purchase Calming
Relief again in the future if it is truthfully labeled. (*Id.*). She brings this suit on
behalf of a putative nationwide class of purchasers of the Products. (*Id.* at ¶ 1).

## B. Procedural Background

Plaintiff initiated this action by filing the Complaint on January 3, 2022.
(Dkt. #1). On January 25, 2022, Defendant requested leave to file a motion to

dismiss.  (Dkt. #8).  The Court held a pre-motion conference on February 18, 2022, at which time (i) Plaintiff declined an opportunity to amend her Complaint and (ii) the Court set a briefing schedule for Defendant's contemplated motion.  (Feb. 18, 2022 Minute Entry).  Defendant filed its motion to dismiss and supporting papers on February 25, 2022 (Dkt. #20), portions of which were refiled on March 3, 2022, to comply with the Court's filing conventions (Dkt. #22-24).  Plaintiff filed her opposition on March 15, 2022.  (Dkt. #29).  The Court granted Defendant's request to extend its reply deadline by a week (Dkt. #31), and Defendant filed its reply on April 18, 2022 (Dkt. #32).  Subsequently, Plaintiff filed a notice of supplemental authority (Dkt. #33), to which Defendant promptly responded (Dkt. #34).  The motion is thus fully briefed and ripe for the Court's consideration.

## DISCUSSION

### A.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "draw all reasonable inferences in [p]laintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009).  "In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'"  *Hu* v. *City of New York*,

927 F.3d 81, 88 (2d Cir. 2019) (quoting *Samuels* v. *Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)).

A complaint will survive a motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**B.     Plaintiff Lacks Standing to Seek Injunctive Relief, But Has Standing to Raise a Claim for Damages**

The Court begins by addressing the threshold issue of Plaintiff's Article III standing. *See Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Only those disputes that meet the "irreducible constitutional minimum" of standing can be heard in a federal forum. *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing, a plaintiff must show that (i) she suffered an actual or imminent injury in fact which is concrete and particularized; (ii) there is a causal connection between the injury

6

and the defendant's actions; and (iii) it is likely that a favorable decision in the case will redress the injury.  *Id.* at 560-61.  "The party invoking federal jurisdiction bears the burden of establishing these elements."  *Id.* at 561.  In a class action, the standing inquiry focuses on the experience of the named plaintiff, not unnamed members of the potential class.  *See Warth* v. *Seldin*, 422 U.S. 490, 502 (1975); *Nicosia* v. *Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) ("A plaintiff seeking to represent a class must personally have standing.").

"[A] plaintiff must demonstrate standing for each claim and form of relief sought."  *Cacchillo* v. *Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Baur* v. *Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)).  Among other relief, Plaintiff seeks an injunction directing Defendant to stop its allegedly misleading advertising practices.  (Compl. 20 (Prayer for Relief (e))).  Defendant argues that Plaintiff lacks standing to seek injunctive relief on behalf of herself or a putative class because she cannot allege imminent future harm.  (Def. Br. 22-23).  The Court agrees.

The Second Circuit recently explained why it is difficult to establish imminent future harm in consumer protection cases:

> For several reasons, past purchasers of a product, …
> are not likely to encounter future harm of the kind that
> makes injunctive relief appropriate.  In the first place,
> past purchasers are not bound to purchase a product
> again — meaning that once they become aware they
> have been deceived, that will often be the last time they
> will buy that item.  No matter how ubiquitous [the
> product] may be, there is no reason to believe that

> [plaintiff(s)] — having suffered the harm alleged — will choose to buy it in the future.
>
> But even if they do purchase it again, there is no reason to believe that all, or even most, of the class members will incur a harm anew. Supposing that they have been deceived by the product's packaging once, they will not again be under the illusion [of the false advertising]. Instead, next time they buy one of the newer [products], they will be doing so with exactly the level of information that they claim they were owed from the beginning.

*Berni* v. *Barilla S.p.A.*, 964 F.3d 141, 147-48 (2d Cir. 2020).

Plaintiff alleges that she would buy Calming Relief again in the future "if … truthfully labeled." (Compl. ¶ 11). This allegation does not suffice to establish likely future injury. Assuming *arguendo* that Plaintiff is now aware that the collagen in the Product may not perform as advertised, she cannot be misled by Defendant's representations regarding that ingredient. If she chooses to pay a premium for the Product in the future, she does so knowingly; she "cannot plausibly again by deceived by the Product's label, regardless of whether it is changed." *Gordon* v. *Target Corp.*, No. 20 Civ. 9589 (KMK), 2022 WL 836773, at *8 (S.D.N.Y. Mar. 18, 2022); *see also Wargo* v. *Hillshire Brands Co.*, — F. Supp. 3d —, No. 20 Civ. 8672 (NSR), 2022 WL 1204652, at *10 (S.D.N.Y. Apr. 22, 2022); *Campbell* v. *Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 395-96 (S.D.N.Y. 2021); *Goldstein* v. *Walmart, Inc.*, No. 22 Civ. 88 (LJL), 2022 WL 16540837, at *14 (S.D.N.Y. Oct. 28, 2022) (all rejecting future injury theories similar to Plaintiff's).

Plaintiff does, however, have standing to bring claims for monetary damages. Past injury can provide a basis for standing to seek damages.

*Nicosia*, 834 F.3d at 239.  In the consumer protection context, a plaintiff is injured by paying extra for a product based on the defendant's deception.  *Axon* v. *Fla.'s Nat. Growers, Inc.*, 813 F. App'x 701, 703-04 (2d Cir. 2020) (summary order).  Plaintiff alleges that she paid a "substantial price premium" for Calming Relief because of Defendants' representation that the collagen in the product would combat aging.  (Compl. ¶ 11).  This allegation is sufficient to establish constitutional injury at this stage in the proceedings, even though Plaintiff does not identify the exact amount of that premium.  *Fla.'s Nat. Growers, Inc.*, 813 F. App'x at 704 ("[A plaintiff]'s failure to identify the prices of competing products to establish the premium that she paid is not fatal to her claim at this stage of the proceedings." (alteration adopted and internal citation and quotation marks omitted)).  The Court will therefore proceed to consider the merits of Plaintiffs' damages claims.[2]

---

[2]    Defendant raises a second standing challenge, this time requesting that the suit be limited to allegations regarding Calming Relief because Plaintiff lacks standing to pursue claims related to products she did not purchase.  (Def. Br. 21-22).  This argument confuses constitutional standing with class standing.  *See NECA-IBEW Health & Welfare Fund* v. *Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir. 2012) (explaining that whether a plaintiff has "'class standing' — that is, standing to assert claims *on behalf of* purchasers [of the same or similar products] — does not turn on whether [she] would have statutory or Article III standing").  Once a consumer-plaintiff has established Article III standing, as Plaintiff has done here, she may assert consumer protection claims relating to products she did not purchase if she plausibly pleads that "[i] the products are substantially similar to the products that [she] did purchase; and [ii] the alleged misrepresentation is the same."  *Rivera* v. *S.C. Johnson & Son, Inc.*, No. 20 Civ. 3588 (RA), 2021 WL 4392300, at *9 (S.D.N.Y. Sept. 24, 2021).

Plaintiff made that showing for Calming Relief, Liquid Collagen, and Sleeping Collagen.  She alleges that the Products are similar because each contains Defendant's proprietary vegan collagen.  (Compl. ¶¶ 1, 27).  She also alleges that each Product's label represents that its component collagen will produce "advanced anti-aging" benefits.  (*Id.* at ¶ 27).  Defendant does not contest those similarities.  (*See* Def. Br. 21-22; Def. Reply 9).  No more is required at this early stage in the litigation.  *See Buonasera* v. *Honest Co., Inc.*, 208 F. Supp. 3d 555, 563 (S.D.N.Y. 2016).

**C.      The Court Dismisses Plaintiff's Deceptive Business Practice and False Advertising Claims for Failure to State a Claim**

      **1.      New York General Business Law §§ 349-350**

New York General Business Law ("GBL") Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]"  N.Y. Gen. Bus. Law § 349(a).  GBL Section 350 prohibits the same, except that it is limited to claims of false advertising.  *Id.* § 350; *see also Goshen* v. *Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002) (noting that the statutes are "identical" other than this difference in scope).  These provisions are broadly designed to address "the numerous, ever-changing types of false and deceptive business practices which plague consumers in [New York] State."  *Karlin* v. *IVF Am., Inc.*, 93 N.Y.2d 282, 290-91 (1999).

      The standard for recovery is the same under both provisions.  *Goshen*, 98 N.Y.2d at 324 n.1.  "To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in [i] consumer-oriented conduct that is [ii] materially misleading and that [iii] plaintiff suffered injury as a result of the allegedly deceptive act or practice.'"  *Orlander* v. *Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch* v. *Acker, Merrall & Condit Co.,* 18 N.Y.3d 940, 944 (2012)).  The deceptive act can either be a

---

The same cannot be said for Defendant's other, unnamed products alluded to in the Complaint.  (*See* Compl. ¶ 1 n.1 ("Algenist Collagen Products include, but are not limited to, Algenist Genius Calming Relief, Algenist Genius Liquid Collagen, and Algenist Genius Sleeping Collagen.")).  Without more specific allegations as to the identity of those products, the Court cannot assess their similarities to the product Plaintiff purchased.

representation or an omission.  *See Oswego Laborers' Local 214 Pension Fund* v. *Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995).  Deceptive conduct "need not reach the level of common-law fraud to be actionable," *Stutman* v. *Chem. Bank*, 95 N.Y.2d 24, 29 (2000), and thus deceptive business practice and false advertising claims are not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), *Pelman ex rel. Pelman* v. *McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

Defendant does not contest that the challenged advertising is consumer-oriented.  Its arguments focus instead on the other two elements of claims under Sections 349 and 350: whether Defendant engaged in materially misleading conduct and whether that conduct injured Plaintiff.  Because Plaintiff has not adequately alleged that Defendants' representations regarding topical collagen are untrue, she has not carried her burden on the materially misleading element and thus has not stated a claim for deceptive practices or false advertising under New York law.[3]

---

[3]     Because Plaintiff's statutory claims fail for lack of materially misleading conduct, the Court need not reach the injury analysis.  The Court notes briefly, however, that Plaintiff likely carried her burden on that element.

To state a claim of injury under Sections 349 and 350, a consumer must allege that, "on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase."  *Orlander* v. *Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015).  This can be shown by asserting that "a particular product was marketed as having a special quality, that the marketing enabled the company to charge a premium for the product, and that the plaintiff paid this premium and later discovered that the product 'did not, in fact, have the marketed quality.'"  *Anderson* v. *Unilever U.S., Inc.*, — F. Supp. 3d —, No. 21 Civ. 3117 (KMK), 2022 WL 2181575, at *7 (S.D.N.Y. June 16, 2022) (quoting *Duran* v. *Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020)); *see also Eidelman* v. *Sun Prods. Corp.*, No. 21-1046-cv, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022) (summary order) ("One method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a 'price premium' — that

### 2.    Plaintiff Fails to Allege That Defendant Made a Materially Misleading Representation

Defendant primarily argues that Plaintiff's GBL claims fail as a matter of law because Plaintiff failed to plausibly allege that Defendant's advertising is false or misleading.  (Def. Br. 8-18).  Conduct is materially misleading if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Cohen* v. *JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quoting *Oswego Laborers' Local 214*, 85 N.Y.2d at 26).  To survive a motion to dismiss, the plaintiff "must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers."  *Twohig* v. *Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (internal quotation marks omitted) (quoting *Sarr* v. *BEF Foods, Inc.*, No. 18 Civ. 6409 (ARR) (RLM), 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020)).  "Instead, [the] plaintiff[] must 'plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled.'"  *Id.* (quoting *Sarr*, 2020 WL 729883, at *3); *see also Weinstein* v. *eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y.

---

is, as a result of the defendant's deception, the plaintiff paid more for a product than he otherwise would have.").

Consistent with this line of cases, Plaintiff alleges that she paid a "substantial price premium due to [Defendant's] false and misleading collagen claims" (Compl. ¶ 11), and that had she known that Calming Relief could not provide the anti-aging benefits it advertises, she would not have purchased it or "would not have paid as much as [she] did" (*id.* at ¶ 10).  Courts in this District consistently find similar allegations sufficient at the motion to dismiss stage.  *See, e.g.*, *Fishon* v. *Peloton Interactive, Inc.*, No. 19 Civ. 11711 (LJL), 2020 WL 6564755, at *10-11 (S.D.N.Y. Nov. 9, 2020); *Duran*, 450 F. Supp. 3d at 351; *Weisblum* v. *Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292-93 (S.D.N.Y. 2015); *see also Ackerman* v. *Coca-Cola Co.*, No. 09 Civ. 395 (JG) (RML), 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010).

2011) ("[T]he applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled by [the defendant's] actions.").  Although consumer fraud claims are often fact-intensive, in appropriate circumstances courts may conclude as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.  *Fink* v. *Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (per curiam) (citing, *inter alia*, *Marine Midland Bank*, 85 N.Y.2d at 26).

The primary evidence in a false advertising case is the advertising itself. *Fink,* 714 F.3d at 742.  Courts do not look at the challenged statement in isolation, but rather "consider the challenged advertisement as a whole[.]" *Mantikas* v. *Kellogg Comp.*, 910 F.3d 633, 636 (2d Cir. 2018); *see also Lugones* v. *Pete & Gerry's Organic, LLC,* 440 F. Supp. 3d 226, 241 (S.D.N.Y. 2020) ("The entire mosaic is viewed rather than each tile separately." (quoting *Belfiore* v. *Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015))).  Thus a potentially misleading statement may not be actionable if accompanied by "a disclaimer or similar clarifying language[.]"  *Fink*, 714 F.3d at 742; s*ee also Broder* v. *MBNA Corp.,* 722 N.Y.S.2d 524, 526 (1st Dep't 2001) ("[T]here can be no [S]ection 349(a) claim when the allegedly deceptive practice was fully disclosed[.]").

Defendant asserts that dismissal is warranted because (i) the challenged advertisements do not make the representations the Complaint alleges, and (ii) Plaintiff failed to plead facts showing that the Products cannot provide the

advertised benefits.  (Def. Br. 7-16).[4]  The Court considers each of these arguments in turn.

### a.    The Meaning of the Challenged Representations

The parties first disagree on what the Products advertise.  In Plaintiff's view, the Products "prominently claim[]" to "contain vegan collagen that will provide ... anti-aging and skin restoring" benefits.  (Compl. ¶ 9).  Defendant counters that a reasonable consumer viewing the challenged advertisements would understand that the Products as a whole, and not any one ingredient, produce the advertised results.  (Def. Br. 7-8).

Both views find support in the face of the advertisements.  Several facts lend credibility to Plaintiff's interpretation.  For one, the phrase "ADVANCED ANTI-AGING" appears in close proximity to the word "collagen" on the Products' front labels, potentially suggesting a connection between the ingredient and the advertised effect.  (Compl. ¶ 22; Garff Decl., Ex. A).  Additionally, "collagen" is referenced twice on the front of each Product, more than any other ingredient. And finally, the Product names each include the word "collagen."  From all of these factors, a consumer viewing the Products could plausibly interpret the advertisements as promising that their collagen combats signs of aging.

---

[4]    Defendant also argues that the phrase "vegan collagen" itself is not misleading because reasonable consumers are aware that vegan products mimic animal-based products but do not exactly replicate them.  (Def. Br. 16-19).  Plaintiff does not defend this theory of false advertising in its reply, instead focusing on whether Defendant's anti-aging claims are misleading.  (*See* Pl. Opp. 3-15).  Accordingly, any claims based on this theory are dismissed.  *See Malik* v. *City of N.Y.*, 841 F. App'x 281, 284 (2d Cir. 2021) (summary order) ("When a party fails adequately to present arguments' in a brief, a court may properly 'consider those arguments abandoned[.]'" (quoting *State St. Bank & Tr. Co.* v. *Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004))).

Defendant's view is supported as well.  Importantly, the Products' labels do not explicitly say that collagen causes "ADVANCED ANTI-AGING" — that phrase stands alone.  (*See* Garff Decl., Ex. A).  And each label prominently names a second ingredient — "Alguronic Acid" or "Algae Oligosaccharides" — alongside collagen below the brand's name.  (*Id.*; Compl. ¶ 22).  From this, a consumer could understand that those two ingredients work together to fight aging.  Significantly, however, the fact that the labels name two ingredients does not make it "patently implausible" for a consumer to think that collagen is responsible for the advertised effects, particularly given the other factors described above.  *See Eidelman* v. *Sun Prods. Corp.*, No. 21-1046-cv, 2022 WL 1929250, at *4 (2d Cir. June 6, 2022) (summary order).

Because Plaintiff's reading and Defendant's reading of the face of the challenged advertisements are both reasonable, the Court cannot say that one is correct as a matter of law.  "Where a representation is capable of two possible reasonable interpretations, the misleading one should not be rejected simply because there is an alternative, non-misleading interpretation." *Fishon* v. *Peloton Interactive, Inc.*, No. 19 Civ. 11711 (LJL), 2020 WL 6564755, at *7 (S.D.N.Y. Nov. 9, 2020); *see also Hess* v. *Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020) (denying motion to dismiss because consumer's interpretation of words on product package was "equally, if not more plausible" than manufacturer's).

Other parts of the Products' packaging do not dispel this ambiguity. Defendant calls the Court's attention to another side of the Liquid Collagen

box, which (i) describes that product as "a collagen-based formulation for a more youthful and vital appearance" and (ii) notes that Liquid Collagen's "unique dual-phase formula suspends microbeads of microalgae oil in a vegan plant collagen water and plant collagen amino acids to help reclaim a more youthful appearance and fight the 5 visible signs of aging." (Def. Br. 8; Garff Decl., Ex. A). Similarly, the Calming Relief package explains that its "combination of Active Vegan Collagen,* Alguronic Acid, Calendula & other soothing agents is designed to visibly reduce redness & the look of irritated skin, protect moisture retention, restoring bounce & resilience." (Def. Br. 3; Garff Decl., Ex. A). In Defendant's view, these more detailed descriptions make clear to consumers that the Products' unique combination of ingredients, and not collagen alone, produce the advertised benefits. (Def. Br. 3, 7-8).

Before addressing this argument, the Court briefly explains why it may consider those statements even though they do not appear on the Products' front label alongside the challenged representations. The Second Circuit has addressed circumstances in which a court could consider non-challenged statements and representations on packaging; it concluded in that case that the ingredients list on the side of a cereal box did not dispel consumer confusion about the meaning of the phrase "MADE WITH WHOLE GRAIN" on the front of the box. *Mantikas* v. *Kellogg Comp.*, 910 F.3d 633, 637 (2d Cir. 2018). The Court explained that "reasonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from … small print on the side of the box." *Id.* (alteration

16

adopted) (quoting *Williams* v. *Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)).  However, even considering the ingredient list, the Court found that certain entries on the list "contradict, rather than confirm, Defendant's 'whole grain' representations on the front of the box."  *Id.*

      *Mantikas* does not stand for the proposition that courts may *never* consider other sides of a package in false advertising cases.  Instead, after *Mantikas,* courts in this District have distinguished between cases involving statements susceptible to only one interpretation and cases involving ambiguous statements.  *See, e.g.*, *Bynum* v. *Family Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 311-13 (S.D.N.Y. 2022) (collecting cases).  When the meaning of a challenged statement is clear, shoppers expect that the rest of the package will confirm that representation and are not reasonably expected to investigate further.  *See Mantikas*, 910 F.3d at 637 ("[R]easonable consumers expect that the ingredient list contains more detailed information about the product that *confirms* other representations on the packaging." (quoting *Gerber Prods. Co.*, 552 F.3d at 939-40) (emphasis added)).  But when a statement is ambiguous, "every reasonable shopper knows the devil is in the details" and thus would seek clarification elsewhere on the package.  *Boswell* v. *Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 94 (S.D.N.Y. 2021) (quoting *In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 275 F. Supp. 3d 910, 923 (N.D. Ill. 2017)); *see also Bynum*, 592 F. Supp. 3d at 311 (determining that a reasonable consumer would consider other side of label to "clarify his or her understanding" of ambiguous term).  Because, as described above, the

challenged representations in this case can be interpreted in two ways, they fall into the latter camp and the Court may consider the supplemental descriptions for clarification.

But even considering the additional statements, it is still plausible that the challenged advertising could cause consumers to believe that it is the collagen alone in the Products that counters aging. In other words, the statements offered by Defendant do not sever the association between collagen and the touted benefits. In fact, at least two of them mention collagen in connection with promises of "a more youthful … appearance." (*See* Garff Decl., Ex. A). Although some of the statements also refer to other ingredients, a reasonable consumer could believe that collagen plays a key role in producing the advertised results. "[T]he sufficiency of … [a] disclaimer depends on its effect on consumers, which raises factual questions that are not well suited for resolution on a motion to dismiss." *Int'l Code Council, Inc.* v. *UpCodes, Inc.*, 43 F.4th 46, 62 (2d Cir. 2022); *cf. Freeman* v. *Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (affirming dismissal of false advertising claim because disclaimer appeared immediately next to the challenged representations and was so clear that it rendered challenged statement unambiguous). Thus for purposes of evaluating this motion to dismiss, the Court credits Plaintiff's assertion that a reasonable consumer could only understand the challenged advertisements as promising that the collagen in the Products provided "anti-aging and skin-restoring" benefits. (Compl. ¶ 9).

### b. The Complaint Fails to Allege that the Collagen in the Products Cannot Provide Anti-Aging Benefits

Having identified the proper analytical framework, the Court proceeds to consider whether the challenged advertisements, as Plaintiff reads them, could mislead a reasonable consumer. Plaintiff maintains that Defendant's assertion that the vegan collagen in the Products will provide advanced anti-aging benefits is misleading because "topical collagen products are incapable of producing these desired effects." (Compl. ¶ 20). Specifically, the Complaint asserts that collagen molecules — vegan or otherwise — are "too large to be absorbed into the skin when applied in a cream," and thus cannot counteract aging. (*Id.* at ¶ 8).

To assess Plaintiff's theory, the Court must first determine the meaning of "advanced anti-aging." The Complaint never explicitly defines this phrase. It does, however, explain that a natural decrease in collagen production over time "lead[s] to the dehydration and thinning of the skin, causing wrinkles to form and joint cartilage to weaken." (Compl. ¶ 17). It also notes that some topical collagen products seek to "smooth[] wrinkles and improv[e] skin elasticity." (*Id.* ¶ 19). And finally, it contrasts ingestible collagen, which "has some (mild) effect on skin hydration, elasticity, and wrinkling," with topical collagen products, which are "simply worthless as they are incapable of having any anti-aging or skin-firming effects on the skin." (*Id.* at ¶ 21). From this, the Court discerns that hydrating the skin, smoothing wrinkles, improving skin elasticity, and strengthening joint cartilage are what Plaintiff considers to be anti-aging effects.

19

Plaintiff assumes that collagen cannot have these anti-aging benefits because it does not penetrate the skin.  But Plaintiff's own source undermines both parts of this assumption.  The Complaint cites an article from online publication *Coveteur* to substantiate Plaintiff's claim about the size of vegan collagen molecules.  (*See* Compl. ¶ 26 n.14 (citing Jenna Igneri, *What Exactly Is Vegan Collagen — And How Can It Benefit Your Skin?*, Coveteur (Jan. 21, 2021), https://coveteur.com/2021/01/21/vegan-collagen/ (available at Garff Decl., Ex. B))).[5]  That article describes a dispute over whether collagen can penetrate effectively into the skin, but goes on to conclude that regardless, topical collagen is "an effective moisturizer that can improve the appearance of lines and wrinkles."  (Garff Decl., Ex. B; *see also id.* ("Regardless of molecule size, however, [vegan collagen] still has the same moisturizing benefits of topical animal collagen, which can reduce the appearance of lines and wrinkles, at least temporarily.")).  As explained previously, hydrating the skin and reducing lines and wrinkles are anti-aging effects.  (Compl. ¶¶ 17, 19, 21).  Thus by Plaintiff's own representations, the collagen in the Products can perform as advertised, and there is no actionable misrepresentation.  *See Cosgrove* v. *Blue Diamond Growers*, No. 19 Civ. 9883 (VM), 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020) (dismissing deceptive practice and false advertising claims because the challenged statements were not misleading);

---

[5]     The Court may consider the full text of the *Coveteur* article because the article is incorporated into the Complaint by reference.  *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 112 (2d Cir. 2010) ("Because [plaintiff] referred in her complaint to [external documents] ..., the District Court could deem them incorporated in the complaint and therefore subject to consideration in its review of the adequacy of the complaint.").

*Davis* v. *Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 336-37 (E.D.N.Y. 2018) (same).

Nor has Plaintiff alleged that vegan collagen is ineffective in combination with the Products' other ingredients.  Plaintiff does not address the effectiveness of the Products' formulas as a whole, and instead maintains that her challenge to collagen is sufficient to establish that the Products do not work as advertised.  (Pl. Opp. 11-14).  The cases on which Plaintiff relies do not support this proposition.  For instance, *Rosenfeld* v. *AC2T, Inc.* involved an advertisement claiming that a product's combination of sugar, salt, and yeast kills mosquitos by causing their stomachs to rupture.  No. 20 Civ. 4662 (FB) (PK), 2021 WL 4197176, at *1 (E.D.N.Y. Sept. 15, 2021).  The consumer-plaintiff in that case produced multiple studies concluding that those ingredients, when combined, could not kill mosquitos in the advertised manner.  *Id.* at *1, 3.  Even though the studies did not evaluate the challenged product specifically, the consumer's allegations met the plausibility standard because they addressed the advertisement's core claims; if substantiated, the studies would show that the product cannot perform as promised.  *Id.* at *3.  Not so here.  Plaintiff has not alleged, for instance, that vegan collagen and alguronic acid together cannot counteract aging.  In fact, the *Coveteur* article names Sleeping Collagen one of its favorite vegan collagen products, and describes how several of its ingredients target different signs of aging.  (*See* Garff Decl., Ex. B).  While "[t]he claim that a product physically cannot work is a valid legal theory," *Rosenfeld*, 2021 WL 4197176, at *3, Plaintiff has not

21

plausibly alleged that vegan collagen is necessarily ineffective, alone or in the context of the Products' formulas.

This conclusion is consistent with that of another court in this District. *Lopez* v. *L'Oréal USA, Inc.* involved a challenge to representations on the labels of two collagen-based moisturizers from cosmetics manufacturer L'Oréal. No. 21 Civ. 7300 (ALC), 2022 WL 4479891, at *1 (S.D.N.Y Sept. 27, 2022).  The front of each moisturizer's package prominently featured the phrases "COLLAGEN MOISTURE FILLER" and "DAILY MOISTURIZER."  *Id.*  Below those phrases, one product claimed to "[v]isibly smooth wrinkles" and "[r]estore skin's cushion."  *Id.*  The other product similarly promised to "[r]estore skin's cushion" and "smooth wrinkles."  *Id.*  As in this case, the *L'Oréal* plaintiffs claimed that the moisturizers could not possibly provide the anti-aging and skin-firming benefits that they advertise because "the topical collagen and collagen-related ingredients in the [moisturizers] … each have a molecular weight too high to penetrate the skin."  *Id.* at *2.  The *L'Oréal* court rejected this theory, concluding that "the collagen's inability to penetrate the skin does not render the packaging and its claims materially misleading."  *Id.* at *3.  After all, the collagen could work to moisturize the skin while other ingredients target different aspects of aging.  *Id.*

The *L'Oréal* court did, however, allow the plaintiffs' claims to proceed on a different theory.  It held that the moisturizers' labels could mislead a reasonable consumer into believing that their collagen mimics the effects of collagen that naturally occurs in the body rather than merely moisturizing.

*L'Oréal USA, Inc.*, 2022 WL 4479891, at *5.  The language on the moisturizers'
labels — namely, that the products would "smooth[] wrinkles" and "restore
skin's cushion" — along with the use of the word "filler" in the products'
names, convinced the *L'Oréal* court that the challenged advertisements served
to associate the moisturizers with the skin-plumping benefits of natural
collagen.  *Id.* at *5 ("It is wholly plausible that a reasonable consumer,
shopping for cosmetics, saw a product named COLLAGEN MOISTURE FILLER,
promising to 'smooth wrinkles' and 'restore skin's cushion,' and associated this
product with the cosmetic benefits of the collagen molecule.").

    The differences in packaging between this case and *L'Oréal* explain the
differences in results.  The advertisements in *L'Oréal* made specific
representations about what effects the collagen in the moisturizers would have,
and those promised effects closely parallel the effects of naturally occurring
collagen.  Because of those parallels, a consumer could mistakenly believe that
the collagen in the moisturizers replenishes, or has identical effects to, natural
collagen.  Here, by contrast, the Products tout "advanced anti-aging" generally.
This vague guarantee does not create the same type of association between
artificial and natural collagen as the more defined promises at issue in
*L'Oréal*.[6]

    Plaintiff is not required to prove her claims at this stage in the case.  But
to survive a motion to dismiss, she must plead facts that, if substantiated,

---

[6]    Of potential note, Plaintiff alleged in her Complaint that "no topical collagen product
can stimulate and increase natural collagen production."  (Compl. ¶ 20).  However,
nothing in the Products' packaging made such a claim.

prove her allegations.  *Faber*, 648 F.3d at 104.  Because Plaintiff's theory that the Products cannot provide anti-aging benefits is not supported by the allegations in the Complaint, she has failed to state a claim for false advertising or deceptive business practices.

### D.   The Court Dismisses Plaintiff's Claim for Breach of Warranty for Failure to State a Claim

Plaintiff's next claim alleges that Defendant breached its express warranty by promising that the collagen in the Products provides the user "advanced anti-aging" benefits, when in fact the Products are incapable of providing those benefits.  (Compl. ¶¶ 62-63).  "An express warranty is an 'affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain.'"  *Barreto* v. *Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806 (S.D.N.Y. 2021) (quoting N.Y. U.C.C. § 2-313(1)(a)).  To adequately state a claim for breach of an express warranty under New York law, the plaintiff must plead "[i] a *material statement* amounting to a warranty; [ii] the buyer's *reliance* on this warranty as a basis for the contract with his immediate seller; [iii] the *breach* of this warranty; and [iv] injury to the buyer *caused* by the breach."  *Lugones*, 440 F. Supp. 3d at 235 (quoting *Brady* v. *Basic Rsch., L.L.C.*, 101 F. Supp. 3d 217, 235 (E.D.N.Y. 2015)).  Additionally, the buyer must, "within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  *Tomasino* v. *Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (quoting N.Y. U.C.C. § 2-607(3)(a)).

Plaintiff's breach of warranty claim fails for the same reason that her statutory claims fail:  Even if Plaintiff relied on Defendant's warranty that the vegan collagen in the Products counteracts aging, Plaintiff has not shown that the Products cannot deliver on that promise.  *See Yu* v. *Dreyer's Grand Ice Cream, Inc.*, 592 F. Supp. 3d 146, 162 (S.D.N.Y. 2022) (dismissing breach of express warranty claim because a reasonable consumer would not be misled by the challenged advertising — "the same reasons her GBL claims fail"); *Jones* v. *Orgain, LLC*, No. 20 Civ. 8463 (VB), 2021 WL 4392783, at *4 (S.D.N.Y. Sept. 24, 2021) ("Because plaintiff has failed plausibly to allege her claims under GBL Sections 349 and 350, plaintiff's claim[] for ... breach of express warranty ... also fail[s]."); *Blue Diamond Growers*, 2020 WL 7211218, at *3 (dismissing false advertising, deceptive practice, and breach of warranty claims together because all are "premised on the same contention: [d]efendant's labeling of the [p]roduct is misleading").  Without an allegation of breach, Plaintiff has not stated a claim for breach of warranty.[7]

## E.   The Court Denies Plaintiff's Request for Leave to Amend

At the end of her opposition, Plaintiff notes cursorily that "if the motion [to dismiss] is granted in any respect, Plaintiff should be given leave to amend." (Pl. Opp. 23 (citing *Foman* v. *Davis*, 371 U.S. 178, 182 (1962))).  Federal Rule of

---

[7]    Because Plaintiff has failed to state a claim, the Court denies as moot Defendant's motion to strike Plaintiff's nationwide class allegations.  (*See* Def. Br. 23-25).  *See Bookends & Beginnings LLC* v. *Amazon.com, Inc.*, No. 21 Civ. 2584 (GHW) (VF), 2022 WL 4586021, at *2 (S.D.N.Y. Sept. 29, 2022) ("Because the Court has granted Defendants' motions to dismiss, it denies Defendants' applications to strike Plaintiff's class allegations as moot.").

Civil Procedure 15(a)(2) provides that a court should freely give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  That said, it remains "within the sound discretion of the district court to grant or deny leave to amend."  *Broidy Cap. Mgmt. LLC* v. *Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (internal quotation marks and citation omitted).  Leave may be denied where the proposed amendment would be futile.  *See Olson* v. *Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020). Amendment is futile if the "amended portion of the complaint would fail to state a cause of action."  *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *see also Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (finding amendment not futile where amended complaint would be "sufficient to withstand a motion to dismiss").

After receiving and responding to a pre-motion letter from Defendant that mirrored the claims made in the instant motion, Plaintiff declined the Court's invitation to amend her pleadings.  (Dkt. #27 at 3 (transcript of pre-motion conference of February 18, 2022)).  More pointedly, however, Plaintiff has offered no indication as to how she could plead a viable claim for deceptive business practices, false advertising, or breach of warranty with respect to the Products, and the above analysis suggests to the Court that she cannot. Accordingly, the Court denies Plaintiff's request for leave to amend.

26

## CONCLUSION

Because Plaintiff has not stated a claim for deceptive practices, false advertising, or breach of express warranty, Defendant's motion to dismiss is GRANTED.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      November 28, 2022
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

27